## McCASKLE v. AMARINE.

1. The hand writing of a justice of the peace, to an execution issued by him, may be proved by a third person, without calling the justice himself.

2. A deed is not properly recorded upon the affidavit of the subscribing witnesses, " that they acknowledged their signatures to this deed."

3. The possession of land under a claim of right, is *prima facie* such an interest as is subject to levy and sale, although the possession may not have continued such a length of time as to bar the right of entry.

4. It is no objection to the validity of a deed, that it is not recorded, except as to creditors, and subsequent purchasers. The notice of title given by possession, is equivalent to the constructive notice afforded by registration of the deed.

3

5. When a suit is brought against several persons, as tenants of the same lands, and A. is "admitted to defend as landlord, for each, and all of said original defendants," and pleads not guilty, it is in effect the same, as if he had instituted the suit himself, and he cannot therefore object that a judgment is rendered generally for the damages, without ascertaining the value of the rent of each tenant, *Quere?* can a joint action be maintained, if objected to, against several persons occupying separate parcels of the land.

6. The possession of a fraudulent vendee cannot be deemed adverse, as against creditors and purchasers from the vendor, where the subsequent purchase was made under judicial process; and the possession of the tenants of the fraudulent vendee, must be considered as his possession.

7. A vendee claiming to have purchased land by delivering up the note of the vendor, must, as against the existing creditors of the vendor, prove that the note evidenced a real debt.

8. The mere fact, that the entire consideration recited in a deed has not been paid, or that it is not a full equivalent for the property conveyed, does not *per se* make the deed void, though it may cast suspicion over the transaction, and authorize a verdict against it.

Writ of Error to the Circuit Court of Randolph.

THIS was an action of trespass, at the suit of the defendant in error, brought as well to try titles to the east half of section six in township seventeen, and range twelve east in the Coosa land district, as to recover damages for its occupation. The cause was tried by a jury, who returned a verdict for plaintiff, assessing his damages at ninety-five dollars.

From a bill of exceptions sealed at the defendant's instance, it appears that the plaintiff adduced the following evidence, viz: 1. A deed from the sheriff of Randolph to Smith, Culbreath, and Abel, which deed bears date the fourth day of July, 1842, and recites sundry writs of *venditioni exponas*, under which the lands in question were sold, its advertisement, sale, and purchase, by the grantees in the deed. The recitals of the deed, as it respects the levy, advertisement, and sale was proved, and the land was levied on and sold as the property of George McCaskle. 2. At the time of, and long before the sale above stated, plaintiff was a judgment creditor of Geo. McCaskle, and as such redeemed the land from the purchasers at sheriff's sale; to prove which latter fact the plaintiff read to the jury a deed from the purchasers

under the writ of *vend. ex.* This deed bears date the 12th May, 1843; but neither it, nor the preceding one, appears to have been recorded. 3. The writs under which the land was sold were issued on orders of sale, founded on the levies of executions issued by a justice of the peace on sundry judgments rendered by him. These judgments were rendered in May, 1841, levies made and returned to the spring term of the circuit court of Randolph, in 1842, when the orders of sale were made. In offering the proceedings before the justice, the plaintiff was permitted to prove his hand writing by the constable who levied the executions, and was well acquainted with it; and to this the defendant excepted. 4. Plaintiff then proved that John McCaskle resided on the land for eight years previous to the trial, and still continued to live on it. Previous to 1841, he made valuable improvements; the yearly value of the rents and profits was shown. 5. Geo. McCaskle, Willis Bennett, and Peter Bennett occupied separate houses on the land sued for, at the commencement of this action; and no one else was in possession: *Further,* that before this suit was brought, plaintiff demanded of them the possession, which they refused to yield up.

The defendant on his part, offered the following evidence, viz: 1. A deed bearing date in June, 1841, by which Geo. McCaskle, in consideration of $700, conveyed the land in controversy to Reuben McCaskle. This deed purports to have been irregularly proved by the subscribing witnesses before the justice of the peace, who certified the probate; and thereupon the same was recorded in the office of the clerk of the circuit court of Randolph. 2. The subscribing witnesses testified that the grantee of this last deed, when it was made and delivered, surrendered to the grantor a note which he held against the latter for $300, and in addition gave the grantor his note for the like sum—both parties stating at the time that these notes were given to the grantor in consideration of the purchase. The witnesses did not see any money paid. 3. By a law in force in Randolph county in 1841, the clerk of the circuit court was authorized to record deeds, yet it was ruled by the court that the deed was not properly recorded; and thereupon the defendant excepted. 4. An agreement by which a lease was made by the defendant to

Willis and Peter Bennett, for land that they may clear on the premises—bearing date in October, 1842, and continuing seven years, from December 1843 : also, a lease by the defendant to George McCaskle and John Keller of the plantation, houses, &c. on the land during the year 1842.

It was further shown on the part of the plaintiff—1. That Geo. McCaskle, at the time he made the deed to the defendant was much in debt ; that the latter had no visible means but a horse—at times taught a school—sometimes was intemperate in his habits—was the brother of his vendor—had never resided on the land, and had no fixed place of residence. 2. George McCaskle was forty-five or fifty years of age, with a family, and when the deed to his brother bears date, he had no other property but the land in question. 3. Geo. McCaskle, Willis and Peter Bennett had occupied separate portions of the land as tenants under the defendant, ever since the date of the deed to the plaintiff—the defendant frequently visiting his brother. 4. The deed from G. McCaskle to the defendant was signed when no one was present but the parties to it and the subscribing witnesses, though it was written some days before it was executed. 5. The defendant, when he received the deed from his brother was about fifty years of age—unmarried, without family of any kind. This evidence was objected to, but the objection was overruled and the defendant excepted.

The defendant prayed the court to charge the jury as follows : 1. That the plaintiff had not made out a sufficient title to the land sued for to entitle him to recover, unless he had shown a paper title in Geo. McCaskle, or twenty years adverse possession by him. 2. That the two deeds adduced by the plaintiff, if not recorded, are inoperative to entitle him to recover. Both these charges were denied—the court saying that it was unimportant whether or not the deeds were recorded.

The jury were also charged as follows : 1. That as Reuben McCaskle had been made a defendant to the action as the landlord of his brother, and Willis and Peter Bennett, if they were satisfied from the evidence that the title to the premises was in the plaintiff at the commencement of this action, then they should find a verdict against the defendant

McCaskle v. Amarine.

for the lands, and the damages sustained by the plaintiff since the institution of the suit, by the several occupation of these tenants. 2. If the sale and conveyance from Geo. Mc-Caskle to the defendant was fraudulent, made with a view to delay, hinder, and defraud the creditors of the former, then although the land may have been in the actual possession of the defendants tenants, under leases as shown by the evidence, before and at the time of the plaintiff's purchase, the plaintiff was entitled to recover. 3. If the jury were satisfied, that when the deed from Geo. McCaskle to defendant was executed, the latter gave up to the former a note purporting to have been made by him (George) for $300; and at the same time made and delivered to him his own note for the same sum, these facts did not prove that a consideration had passed from the defendant to his vendor. To the refusal to charge as prayed, and to the charges given, the defendant excepted.

L. E. Parsons and J. Falkner, for the plaintiff in error, argued all the questions raised by the bill of exceptions, and cited Morgan v. Morgan, et al. 3 Stew. Rep. 383; Powell v. Allred, 11 Ala. R. 318; Fipps v. McGehee, 5 Port. R. 413; 4 Ala. R. 469; Rhea, Conner & Co. v. Hughes, 1 Ala. R. 219; Smith, et al. v. Hogan, 4 Ala. Rep. 93; Doe ex dem. Davis v. McKinney, 5 Id. 730; Tillotson v. Doe ex dem. Kennedy, Id. 407; Badger v. Lyon, 7 Ala. R. 503; Carloss, use, &c. v. Ansley, 9 Id. 900; Wheaton v. Sexton, 4 Wheat. Rep. 503.

S. F. Rice, for the defendant in error, cited Paris v. Burger, 5 N. H. Rep. 325; Jones v. The Planters' Bank, Id. 619; Jackson v. Merritt, 11 Wend. Rep. 46; Fipps v. Mc-McGehee, 5 Port. Rep. 413; McCain v. Wood, 4 Ala. Rep. 258; Branch Bank at Decatur v. Kinsey, 5 Id. 9; Horton v. Smith, 8 Id. 73; Carloss v. Ansley, Id. 900; Daniel v. Sorrells, 9 Id. 436.

COLLIER, C. J.—Without stopping to inquire whether it was necessary for the plaintiff to produce and prove the proceedings before the justice of the peace, or whether the or-

ders of sale having been made upon their inspection, was not conclusive of their regularity, we would remark, that if such proof was essential, we can discover no objection to the competency of the constable. This witness affirms that he was well acquainted with the handwriting of the justice; and if it was more convenient to obtain his testimony, or the plaintiff preferred relying on it, to calling on the justice to prove or admit his writing, we cannot conceive that any rule of law would be violated. The evidence of the justice might perhaps be more satisfactory and convincing, but it would not be of a higher grade, and could not consequently be rejected under the influence of the rule which requires the best evidence attainable to be adduced.

The certificate upon which the deed from George McCaskle to the defendant was admitted to record, merely affirms that the subscribing witnesses personally came before the justice of the peace, and being duly sworn, deposed "that they acknowledged their signature to this deed. Now, the statute requires where a deed is proved by the subscribing witnesses, that they shall declare on oath, that they saw the grantor sign, seal and deliver the same to the grantee, and that they subscribed their names as a witness thereto in the presence of the grantor, &c. [Clay's Dig. 151-153, § 1-7.] It is, perfectly clear that the certificate does not at all conform to the directions of the act, and the registration cannot be regarded an official act of the clerk, so as to operate a constructive notice of the contents of the deed to those whose interests it may affect.

It was not indispensable to the plaintiff's right to recover, that he should have adduced documentary evidence of a title in the defendant in the executions under which the sheriff sold the land, or that the latter had had twenty years uninterrupted adverse possession. We have repeatedly held, that where a party is in possession of land under a claim of right, he has *prima facie* such an interest as is subject to levy and sale under a *fieri facias;* although the possession may not have continued for such a length of time as to bar a right of entry. Actions of ejectment and of a kindred character have frequently been maintained upon proof of possession for a period short of twenty years. These decisions rest upon the

ground that the defendant in execution, or the plaintiff in such action, had a *legal title*, though it may have been incomplete in itself, or imperfectly evidenced.

It is not indispensable to the validity of a deed conveying lands, that it should be recorded.   But if it is not registered within the time prescribed by our statutes, it is only invalid and inoperative against creditors and subsequent purchasers, &c.   [Clay's Dig. 154, § 18 ; 256, § 8.]   The defendant does not come within either of these classes ; as to him therefore, it is unimportant whether the deed under which the plaintiff deduces a title was ever recorded.   If the purchase under which he claims was *bona fide*, and the plaintiff had constructive notice of it, either by the registration of his deed or the occupation of his tenants, (which may be regarded as equivalent,) the subsequent sale by the sheriff through which the plaintiff claims cannot affect him.

It might perhaps have been questioned whether, if George McCaskle and Willis and Peter Bennett occupied separate parcels of the land in controversy, a joint action could be maintained against them, but that question was not raised, and it is possible the record is now in such a condition, that it cannot be made hereafter.   If the tenants occupied distinct parts of the land, then the verdict against them should have been for damages severally against each, proportioned to the value of the parts they respectively occupied.   The circuit court admitted the defendant to defend the suit "as landlord for each and all of said original defendants," and the plea of "not guilty" was then filed, &c.; the jury found the original defendants (the alledged tenants) not guilty and the defendant guilty—assessing the damages against him, &c.   This proceeding may not be technically correct in every particular, yet as the landlord upon his own motion was admitted as a defendant to defend for his tenants, the case may be considered as if he was a party to the writ. This being so, he could not if the suit had been thus instituted, have objected that his tenants were discharged by the verdict, and that he had been charged with the rents for the premises occupied by them.   As he was instrumental in keeping the plaintiff out of possession by putting others in, he should make good to the plaintiff, the loss resulting from

his ouster, though the tenants might be liable to him for rent; and we think it is not material as it respects the consequences, whether he is made a party under original process, or comes in of his own accord. If the landlord who defends unsuccessfully is liable for the damages accruing after "the commencement of the suit," we can conceive of no objection to the verdict because it is for an aggregate sum, instead of estimating severally the value of the rents for the part occupied by each tenant.

If the sale by George McCaskle was fraudulent, and intended to delay, hinder and defraud his creditors, the fact that the defendant, his vendee, had leased the land to other persons who were in the actual possession when the sale was made by the sheriff under the writs of *venditioni exponas,* or when the plaintiff redeemed the land from the purchasers at that sale, as authorised by the statute, cannot impair the plaintiff's title. The possession of a fraudulent vendee cannot under such circumstances be deemed adverse as against creditors and purchasers, where the subsequent sale is made under judicial process: and the possession of his tenants must be regarded as in subordination to his title.

The judgments before the justice of the peace under which the levies and subsequent orders of sale were made, were rendered before the execution of the deed from George McCaskle to the defendant, and as against the plaintiffs in those judgments, and the purchasers deducing a title to the land through the orders of sale, it devolved upon the defendant to show that the note of his vendor which was delivered up, evidenced a real debt. Without the aid of such extrinsic evidence, no influence can be accorded to it against a pre-existing creditor of the vendor. If the law were otherwise, it would be easy to simulate a debt, manufacture the ostensible proof of it as occasion required, and thus place at defiance the creditors of a debtor who did not feel it a paramount duty to pay his debts. But it is unnecessary to attempt to support this view by reasoning, for it rests upon unquestionable authority.

In respect to the note for three hundred dollars, which was made by the defendant and handed to his vendor at the time the deed was executed, there was nothing to impugn the con-

sideration thus far. It cannot be assumed as a *legal conclusion*, because the vendor's note which was delivered to him was not shown to indicate a real indebtedness, that the vendee's was merely simulated, and intended to put a false phase upon the transaction. The mere fact that the entire consideration recited in a deed has not been paid, or that it is not a full equivalent for the property conveyed, does not *per se* make the deed void, although they might in the opinion of a jury throw suspicion over its fairness, and under some circumstances authorise a verdict against its validity. In the case at bar, the court, instead of passing upon the *bona fides* of the sale and conveyance from George McCaskle to the defendant, and declaring that it was not supported by a consideration, should have laid down the law, and the jury should have determined the questions of fact and the intention of those parties. For the error in the last charge given, the judgment of the circuit court is reversed, and the cause remanded.