POOL ET AL. *vs.* CUMMINGS & CO. ET AL.

1. A Court of Chancery looks only to the equities of parties, and regards the holder of the mere legal title as a trustee for the benefit of all parties equitably interested.

2. As a general rule, recitals in a deed are not evidence of consideration, in a controversy between those claiming under it and a pre-existing creditor of the grantor, in which it is impeached for fraud or want of consideration.

3. A written agreement was entered into between complainants and one P., for the entry and purchase in partnership of lands to be used for mining purposes. Complainants agreed to advance the purchase money, and P. was to enter the lands which he deemed most suitable for mining, and to superintend the working of the mines. The money advanced by complainants was "to be refunded, with interest, out of the first funds realized by the company." P. entered several tracts of land in his own name, with money advanced by complainants, and afterwards transferred them to complainants, to whom patents were subsequently issued by the Government. Some of the lands were sold under execution against P., after the entry in his name but before the issue of complainants' patent, and were purchased at the sale by the judgment creditor, against whom complainants afterwards filed their bill, praying that the lands might be sold, that the purchase money advanced by them, and expenses incurred in payment of taxes, &c., might be refunded to them, and that the residue of the proceeds might be divided according to the terms of the agreement. *It was held,*

   1. That even if the legal title to the lands vested in the purchaser by the sale under execution, still this would not avail him in a court of equity, if complainants had the superior equitable title.

   2. That the registration of his deed by the purchaser, coupled with the complainants' failure to have the written evidence of their claim spread upon the records of the county, did not add any potency to the purchaser's title which it would not otherwise have possessed.

   3. That if complainants advanced the purchase money, and P. acted in the purchase, not for himself individually, but as the partner or agent of the complainants, the complainants were entitled to equitable relief against P., or a purchaser claiming under him, who could only succeed to his rights.

   4. That the written agreement of the parties, and the receipts subsequently executed by P. to the complainants, for the moneys advanced by them, were admissible evidence for the complainants.

ERROR to the Chancery Court of Tuskaloosa.

Tried before the Hon. W. W. Mason.

MOODY, *pro se.*

On the part of the plaintiff in error, Moody, it is insisted that he has a good and perfect title to the lands described in his answer, which ought to have been recognized by the court below.

His note is dated 2d January, 1837; his judgment, 5th February, 1839; his deed, 5th August, 1839. The alleged agreement is dated 12th January, 1837; the patents are dated 20th September, 1839.

Moody's answer, responding to the bill, denies the allegation that the lands he claims were entered in copartnership; but, on the contrary, states that they were entered by Pool, in his own individual name—a portion before, and a portion after the date of the alleged agreement; and that certificates were issued to Pool, in his own individual name; and that all this is shown by the books of the land office. The evidence introduced by complainants, fully sustained these portions of his answer. The patents, (which were all issued, not only after the date of the judgment, but after the date of the sheriff's deed,) show that the patentees are the "assignees of Kinney Pool."

According to the settled law of this court, Pool had a title subject to sale under the judgment at law. Falconer v. Jones & Leath, 15 Ala. Rep. 12; same parties, 12 Ala. Rep. 165.

2. Is there such evidence of a transfer by Pool to his co-patentees, prior to the lien of the judgment, as will defeat the title acquired by the sheriff's sale? The several papers introduced by complainants, the signatures to which were admitted to be in the handwriting of Pool, cannot have that effect. Being admissions of Pool, they were good as against him; but being mere admissions or declarations of Pool, they cannot affect the rights of Moody, who was a pre-existing creditor, whose note, which is the foundation of his judgment, bears date prior to the alleged agreement. There was no extrinsic proof whatever, either that those papers contained the truth, or that they bore their true dates, or that there was any valuable consideration. They were the mere declarations or admissions of Pool—not even under oath. These remarks apply as well to the alleged agreement, as to the receipts and bond. In the language of this court, "In a contest between a creditor and one claiming through the debtor, it is necessary for the latter to prove that the conveyance was not voluntary, by showing that a valuable consideration was given for the property. This is not shown by the recital of that fact

Pool et al. v. Cummings & Co. et al.

in the conveyance, as that is the mere declaration or admission of the grantor; but must be proved by extrinsic evidence." Branch Bank at Decatur v. Kinsey, 5 Ala. Rep. 12; Falconer v. Jones & Leath, 15 Ala. Rep. 12–13.

If the law were otherwise, it would be easy to simulate a transaction, to manufacture ostensible proof, as occasion might require, and thus, by management and fraud, place at defiance the creditor of a debtor, who, as in this case, was angry with him, and not at all disposed to pay his debts.

3. The only remaining testimony is the certificate of the commissioner of the general land office, of an "abstract of certain sales of lands made to Kinney Pool, at the land office at Tuskaloosa, in the year 1837." The court will give no more effect to this certificate than it is properly entitled to. It will not be extended beyond its own language, "an abstract of certain sales of lands made to Kinney Pool." It does not extend to "transfers" from Pool to others; the transfers are not certified to be a true copy; what is said of transfers is certainly not a "copy."

If his certificate extended to the transfers, so much of it would clearly be inadmissible. The commissioner cannot be permitted to substitute his judgment for that of the court, and detemine what is a transfer and what is not. He must give the instrument itself, or at least a copy of it, that the court may determine its legal effect. This is the more important, as "the practice of the land office, from a very early date, has been to recognize assignments, even less technical than this court has held to be valid, and patents daily issue to assignees of the certificate, under the hand of the original purchaser." Falconer v. Jones & Leath, 12 Ala. Rep. 171, and authorities there cited.

To defeat M's. title, the complainants should have shown the transfers themselves, or at least a copy of them, and that they were made bona fide, and at the time of their dates, and that they were "under seal;" they should also have shown that they were given for a "valuable consideration." None of this was done. It was the more important to prove these things in this case, as Vincent (it is matter of public history) was the Register of the land office at Tuskaloosa at the time of these transactions, whereby it was the more easy to fix up

things and ante-date instruments. And there is reason to believe (apart from the record) that these transfers were all made after the judgment. 6 Porter's Rep. 383, Ansley v. Nolan; 12 Ala. Rep. 171, Falconer v. Jones & Leath; 15 Ala. Rep. 12–13, same parties; 5 Ala. Rep. 12, Branch Bank at Decatur v. Kinsey.

4. Moody, in his answer, avers that for many years after he had purchased the lands he claims, at the sheriff's sale, he had never known or heard that there was any such agreement as that set forth by complainants; or that said complainants, or either of them, had any claim or pretence of claim to said lands. He avers that the agreement, or any other writing in regard to said lands, between the complainants and Pitcher and Pool, never was recorded in the proper office. There being no replication or proof to the contrary, this is to be taken as true. 12 Ala. Rep. 171–2, Falconer v. Jones & Leath; Clay's Digest.

5. If Moody's title to the lands he claims is good, it was error to decree the sale of them at the instance of complainants, and without his consent.

6. And more erroneous to allow him only one third of the proceeds of the sale.

7. And yet more erroneous to deduct first the expenses allowed and the costs of suit. If complainants had any demand against Moody for taxes or other expenses, they had their remedy at law. There was no necessity or propriety in dragging him into expensive litigation in chancery.

8. There was error in ordering the notes for the purchase money to be paid to the complainants. If they should collect the money, it might be wholly lost to Moody.

P. & J. L. MARTIN, for defendants:

The claim of defendant, Moody, rests upon his purchase of Pool's interest in a part of said lands at sheriff's sale, under a judgment rendered in his favor against Pool, in Tuskaloosa County Court, 5th February, 1839, more than two years after the entry and transfer of the lands by Pool to the company. No fraud is pretended in these transactions, by proof or otherwise.

We contend, that the Chancellor erred in decreeing one

third of the proceeds of the lands to Moody; because, we say, that the lands in the hands of the firm were first bound for their original cost, with interest, to the members of the firm who paid for the same; that Moody could acquire no better interest in the lands than defendant Pool had; and that hence the decree should have directed the purchase money first to be paid, and then the one third of proceeds to be paid to Moody.

The formation of the copartnership having been made long anterior to the accrual of any lien or interest on the part of Moody, it was not necessary for complainants to show any thing further as to the receipt of money by Pool, or any other part he took in the premises, than is evidenced by his own acknowledgments. Moody's claim is entirely derived through Pool. The assignment of the certificates by Pool, whether bought with his own money or that of the firm, divested himself of two thirds of his original interest, and cannot be complained of by Moody, who at the time had no interest, and acquired no lien until two years thereafter; and the pretext set up, that the note of 2d January, 1837, was the foundation of his judgment, has nothing to do with the question in the absence of an issue of fraud, which is not and cannot be pretended in the proceedings before the court. Such an issue could only be presented by a cross bill impeaching the transaction for fraud, of which there is not a ground shown; and if it could be set up, there is not one word of proof to support such supposition.

The same may be said in regard to the proof of the advance of money by complainants to make the purchase; the acknowledgment of Pool of its receipt, cotemporaneously with the partnership, is all that can be required of the complainants.

The further demand of defendant Moody of the entire lands claimed by him, is equally unreasonable and unjust, in every aspect of the case presented. The transfer of the land after entry, if fraudulent on the part of Pool, would not be sufficient, unless the complainants were participators therein, which cannot be pretended here.

CHILTON, J.—This was a bill in chancery, filed by John O. Cummings & Co. and Vincent & Pitcher against Pool and

others, alleging, that on the 12th day of January, 1837, said complainants entered into an agreement with said Pool for the entry and purchase in copartnership of certain coal lands in Tuskaloosa County, Alabama. An agreement, signed by them respectively, is appended to the bill, by which it appears, that on the date above, the parties agreed to form a company for the purpose of entering or purchasing coal lands, and for the purpose of mining coal, should they thereafter determine to mine; the interest or proportion of the parties in the enterprise to be, one third to Pool, Vincent & Pitcher one third, and the remaining one third to John O. Cummings & Co. The two firms last named, who are the complainants, it is recited, "have paid the said Pool the sum of five hundred dollars, in consideration of which he is to use his best exertions to ascertain where the most desirable entries of land for coal may be made, and with the consent of the company enter, or have the same entered, for account of said company, and is also to superintend the working of said mines, in case the company should determine upon working them." The complainants agreed to advance the money required to make such entries as should be deemed advisable, in equal proportion; that is, Cummings & Co. were to furnish one half, and Vincent & Pitcher the other half, "all such advances to be refunded them, with interest, out of the first funds realized by the company;" but advances made for purposes other than the entry of lands, &c., should be borne by the parties respectively, in proportion to their interest. Pool agreed to transfer to the company the entry last made by him next before the date of the agreement. There are other provisions in the agreement, but it is unnecessary to set them out, as they are not involved in the questions before us.

The complainants further allege, that in pursuance of such agreement they advanced the money, and the said Pool entered divers tracts of lands at $1 $\frac{25}{100}$ per acre, amounting in the aggregate to 809 $\frac{73}{100}$ acres; that they have incurred expenses in payment of taxes and surveying the lands, none of which has been returned to them; that since the lands were purchased nothing has been done with them; that Pool became insolvent and removed to Iowa; that Pitcher was discharged under the bankrupt act, having previously sold his

Pool et al. v. Cummings & Co. et al.

interest to the defendant Aiken; and that Moody and Dou-thit claim an interest in some of said lands, which they, as defendants, can discover.

The prayer is for a sale of said lands, and after a return of the purchase money and expenses incurred, with the interest, the division of the remainder according to the agreement.

Moody answers the bill, and substantially denies the interest of the complainants, and requires proof of the allegations of their bill. He insists that he was the creditor of Pool by note bearing date 2d January, 1837, ten days before the date of Pool's agreement with the complainants; that he obtained judgment on this note against Pool 5th February, 1839; and that 480 acres of the land, which the bill alleges was purchased by Pool with complainants' money, were sold under execution and purchased by him, as appears by the sheriff's deed to him, dated 5th August, 1839; that he bought in ignorance of the complainants' claim; has caused his deed to be regularly recorded, and claims the benefit of a *bona fide* purchase for a valuable consideration; and also insists that his title, which has been duly recorded, should not be postponed to the unrecorded title of the complainants.

It appears, by the certificate from the Commissioner of the General Land Office, that Pool, on the 6th Jan., 1837, had entered in his own name one 80 acre tract; that he entered three other 80 acre tracts on the 12th, two more on the 16th, and two on the 19th of the same month, all which, being entered in his own name, he transferred in the Land Office, on the day last named, to Kinney Pool, John O. Cummings, Chas. G. Pitcher, Wm. L. Powers and John H. Vincent. These, with two other tracts, each embracing eighty acres, bought on the 23d January, 1837, and transferred on the same day in like manner, constitute the entire lands which the complainants allege were purchased under the agreement. Upon these transfers patents were issued to the several persons above named, as assignees of Pool, dated the 20th September, 1839. The complainants also introduced the original copartnership agreement, and two receipts of said Pool, executed on the 12th January, 1837, acknowledging the reception by him, to be expended in the entry and purchase of land, of $600; also the bond of Pool, dated 23d January, 1837, by which he

36

acknowledged to be due the complainants $337 $\frac{39}{100}$, being for Pool's one third of the cost of certain lands entered to date in company with them, and binding himself to pay to the complainants said sum, with interest from date, out of his proportion of the first funds realized by the company, through sale of the lands or otherwise, or whenever he should make sale of his interest. The signatures to these several instruments were admitted to be genuine.

Moody introduced the record of the recovery of his judgment, and the sheriff's deed, as before stated, and this constitutes the case made by the record before us.

The Chancellor decreed a sale of the lands, but held that the lands bought by Moody should not be charged with the payment of the demand sought to be enforced as a lien for the purchase money, but that all the lands should be liable for the taxes, and the expense of surveying made by the company, and that Moody should have one third the nett proceeds of those he had purchased. Both parties are dissatisfied with the decree: Moody, that the court should at all interfere with his title; the complainants, that Moody's third should not also be charged with the indebtedness of Pool to them, for his share of the purchase money.

1. Conceding that Pool had such interest as could be sold under execution at law, and that the *legal title* to the lands bought by Moody, vested in him by virtue of the sheriff's deed, this cannot aid him in the Court of Chancery, which looks to the equities between the parties, and regards the holder of the mere legal title as a trustee for the benefit of all parties equitably interested.

2. Neither does the fact that Moody had his deed recorded, and that the complainants had no evidence of their claim spread upon the records of the county, add any potency to Moody's title, which it would not have possessed aside from such registration. The land, so far as the record discloses, was not in the actual occupation of any one, and the complainants do not claim an interest in them by any deed of conveyance to them which the law required to be registered in the county. The record evidence of their claim is to be found in the office of the Register and Receiver of the District Land Office, and the General Land Office of the United

States. Moody has not claimed the land a sufficient length of time to raise any question upon the statute of limitations, so that the parties are remitted to their equities growing out of the transaction.

It is very clear, that if the lands in controversy were purchased under the copartnership agreement, and are to be re-garded as assets of the concern which was created for mining purposes, then each of the partners has a lien on them, not only for the amount of his share, but for moneys advanced by him beyond that amount, for the use of the partner-ship, Story on Par. 137; Coll. on Par. 65; 1 Ves. 142; 1 Sum. Rep. 173. On the other hand, if they are not to be re-garded as strictly partnership assets, yet if the complainants furnished all the money which was expended in their pur-chase, under an agreement that this money should be return-ed to them, with interest, out of the first proceeds, here would be a lien created by the agreement of the parties, and any person who should purchase the interest of either, would take such interest charged with this lien. Further, if the com-plainants advanced all the purchase money, and Pool, in dis-regard of the agreement to buy the lands for the company, had bought them in his own name, a trust would result in favor of complainants; and as Pool would not be allowed to take advantage of his violation of the trust reposed in him to defeat their rights, so neither can a purchaser, who succeeds only to the rights which he possessed, and nothing more. So that, in any view of this case, if the proof is sufficient to es-tablish what the bill asserts, namely, that the complainants advanced the money to pay for these lands, and that Pool, who paid it, was acting, not for himself individually, but as the partner or the agent of the complainants, a clear case is made out for equitable relief.

But it is strenuously urged by Mr. Moody, that the agree-ment and recitals therein contained, as well as the receipts given by Pool to the complainants, showing the money ad-vanced to him by them under the agreement, as also the bond which he gave them after the date of the last entry made by him, showing the share of the purchase money they had ad-vanced for him, and evidencing his agreement to refund the same to them, are all of them to be regarded as the mere ad-

missions of Pool, and should not be received against him, (Moody) to defeat his claim as a purchaser under a judgment rendered on a note of older date than the agreements.

As a general rule, it is true that the recitals in a deed are not evidence of a consideration, in a controversy between those claiming under it and a pre-existing creditor, when it is impeached for fraud, or want of consideration, by such creditor. The case of Jones & Leath v. Falconer, 15 Ala. Rep. 12, and the cases cited in the opinion in that case, show the extent to which this doctrine has been carried by this court. We are not in the least disposed to trench upon the law as it has previously been settled, and, without questioning the correctness of these cases, we are of opinion they do not affect the case before us.

In McCaskle v. Amarine, 12 Ala. Rep. 17, the reason for the rule which excludes such instruments or recitals, is correctly stated to be, the danger which exists of parties simulating debts, and manufacturing in this way the ostensible proof of them, as occasion might require, and thus being enabled to place their creditors at defiance.

In the case before us, there was no objection to the receipt of these instruments in evidence ; the signatures to them were admitted to be genuine, and the only question was, as to their legal sufficiency to establish the fact of the advance of the money as alleged. Taken in connection with the other evidence, which, as it is made by the Commissioner of the General Land Office, there can be no reason to suppose could be made with a view of sustaining the written instruments between these parties, any further than such instruments truly represented the facts, we arrive at the conclusion, that it is sufficiently shown that the complainants advanced the money for these lands, and that Pool actually owed them, for his share of the purchase money, the amount stipulated in his bond.

The amount expended in the lands entered, substantially corresponds with the amount of money furnished Pool by complainants. The dates of the entries and transfers show that these agreements were not ante-dated ; these, added to the fact that the admissions which Pool made were against his own interest, and no direct attempt is made to impeach the transfers as fraudulent, sufficiently satisfy us that the sev-

eral instruments were not simulated, or manufactured to suit the occasion, but are the genuine evidence of a real transaction, which they correctly set forth.

We are unable to see in this evidence any motive which could have prompted the parties to manufacture it. Had the design been to avoid the debts of Pool, he would hardly have so arranged as to provide for the issue of the patents in his own name, as well as the names of his associates. Under the peculiar facts of this case, the proof satisfies our mind that the complainants furnished the purchase money, and consequently they have a lien on the lands for its repayment. After this, with the expenses provided for by the agreement, shall have been refunded, Moody, as the purchaser of Pool's interest, is entitled to one third the remainder.

The decree of the Chancellor must be reversed, and the cause remanded, that a decree may be rendered, and a reference awarded, in accordance with the principles indicated by this opinion. Let the costs be divided between the parties in this court.