## MARSH vs. MARSH, Adm'r, et al.

[BILL IN EQUITY BY WIDOW, AGAINST HUSBAND'S REPRESENTATIVES, FOR ACCOUNT, &C., AND TO HAVE LANDS AND MONEYS RECEIVED FROM ESTATE OF HER FATHER, BY HUSBAND, DECLARED HER SEPARATE ESTATE.]

1. *Statutory separate estate; when lands bought by the husband will be treated as part of.*—A father, wishing to divide his lands among his children, makes a deed of lands to the husband of his married daughter, and credits the husband for a part of the purchase-money recited in such deed, and takes his note for the balance, and the sum thus credited is charged to the daughter as an advancement of lands on the final settlement of her father's estate, who died in 1858. On such final settlement, of the balance of the purchase of said lands, the lands thus obtained will be regarded in equity as part of her statutory separate estate, when the

transaction commenced on the 9th day of November, 1846, and the husband so recognized it as an investment for her benefit.

2. *Same.*—And if the husband and wife sell the lands thus obtained, in manner required by law for the sale of a married woman's separate estate, and the husband receives the money paid on such sale, it will be treated in equity as the proceeds of the sale of the wife's separate estate.

3. *Same; what election wife may have in such case.*—And if the husband uses the money thus obtained in the purchase of other lands, and takes the title in his own name, in equity, such purchase will be held to be a reinvestment of the wife's separate estate, particularly when the husband declares such to have been the purpose of the transaction, and the wife may elect to take the land in lieu of her money, if she has paid the whole purchase-money, or she may have the lands sold and have her money thus invested paid back to her on the death of her husband.

4. *Statutory separate estate; trustee of, how accountable for property of the wife.*—Since the passage of the act of the 13th of February, 1850, in amendment of the act of the 1st day of March, 1848, for the protection of the rights of married women, the husband has been made, by law, the trustee of her separate estate, and chancery will deal with him in accounting for his wife's property, just as it would with any other trustee, under the limitations and privileges fixed by the law creating his office of such trustee.

APPEAL from the Chancery Court of Wilcox.
Heard before the Hon. J. Q. LOOMIS.

THE facts of the case are set out in the opinion.

The material portion of the evidence of the witness, Burke, to which reference is made in the opinion, is as follows:

\*        \*        \*        \*        \*        \*        \*

"I knew William H. Pledger in his life-time; he was the father of complainant. He died some time in the year 1858, in Wilcox county. He died leaving a last will and testament, which was duly admitted to probate, in the probate court of Wilcox county, Alabama, and letters testamentary on said will were granted to said witness, by the said probate court, in August, 1858. His estate has been finally settled by witness, the representative of the same. Final settlement was made in the probate court of Wilcox county, on the 14th of March, 1864. Stephen Marsh was aware of the said settlement, was present at the same, and assented thereto."

\*        \*        \*        \*        \*        \*        \*

"William H. Pledger did own several tracts or bodies of land in Wilcox county, Alabama. He had the same appraised by Samuel Sellers and D. C. Smith, and his object in having his land appraised, was to enable him to give off to his children an equal proportion of the same, according to that appraisement or valuation. The appraisement was made in the year 1845. He made an advancement to his daughter, Mary Marsh, the complainant, in lands, and made two deeds to the same lands to her husband, Stephen Marsh, his son-in-law, for her; each deed bears date 9th November, 1849. One deed is for four hundred and eighty acres of land, to Stephen Marsh alone; and the other to Stephen and John P. Marsh, jointly, for eighty acres; and both deeds are recorded in the office of the probate judge for Wilcox county. I know it was the object and intention of William H. Pledger to give the lands so deeded to Stephen Marsh, to his daughter, Mary Marsh, the wife of Stephen Marsh; this I know by the declaration of said Pledger, made before said deeds were executed; and the said Stephen Marsh was aware of the object and intention of said Pledger in making said deeds to said Marsh, and he accepted the same as advancements in lands to his wife, the said complainant, and he held the same for her. I know it from the frequent acknowledgments of said Marsh, and his frequently mentioning the said lands as belonging to his said wife, and given to her by her father. I have frequently heard Mrs. Marsh, in the presence of her husband, Stephen Marsh, speak of the said lands as hers; and the said Stephen never set up any claim to the same, adversely to his wife's claim, but always acknowledged that he held the same in trust for her. *No money was ever paid by Stephen Marsh for the lands embraced in the two deeds.* The value of said lands embraced in said deeds, was estimated by said Pledger at $4,800. For the $2,585 mentioned in the deed for four hundred and eighty acres of land, said Marsh gave a receipt for so much received, and executed his note to said Pledger for $2,215, dated November 9, 1848, which note is shown to witness, and is hereto attached, and marked "Exhibit A." The two sums of $2,585 and $2,215 make the sum of $4,800, the estimated

value of the lands embraced in the two deeds. Afterwards this note was taken up and a new note given by said Marsh, in its stead, for the same amount, and which is now shown to witness, and is hereto attached and marked " Exhibit B." By the last will and testament of said Pledger, he directed that the lands thus advanced to his daughter, Mary Marsh, should be estimated at $2,955, and the difference between that amount and the $4,800, to-wit: $1,845, should be paid back to his estate by said Marsh, and the receipt for $2,585, and the note for $2,215, he gave up and cancelled. Stephen Marsh assented to this arrangement, and accordingly gave his note for $1,845 to witness, as executor of the will of said Pledger, and the receipt for $2,585, and the note for $2,215, were surrendered to him. The note thus given for $1,845 was paid out of the share of Mrs. Mary Marsh in her father's estate, and the $2,955 was charged against her share on the final settlement of her father's estate. Said Stephen Marsh and witness agreed upon the advancements and settlement, as hereinbefore stated. No part of the consideration for said lands was ever paid by said Marsh, but the whole was paid for out of the share of complainant in the distribution and settlement of her father's estate, by making her distributive share in the same that amount less.

\*          \*          \*          \*          \*          \*          \*

" I was the son-in-law of William H. Pledger, and intimately acquainted with all of his business and transactions. I was the brother-in-law of said Stephen Marsh, and had frequent conversations with him in reference to the estate of said William H. Pledger.

\*          \*          \*          \*          \*          \*          \*

William H. Pledger informed me of his object in having his lands appraised, and consulted with regard to the same, which was as I have already stated."

PETTUS & DAWSON, for appellant.
S. J. CUMMINGS, *contra.*

[No briefs came into the reporter's hands.]

PETERS, J.—In this case the allegations of the bill, which are sustained by the proofs, show that it was the avowed purpose of William H. Pledger, the father of Mrs. Marsh, the appellant, to divide certain portions of his lands among his children before his death. And it would scarcely be rational to conclude, that so far as Mrs. Marsh was interested, the daughter was not the cause and object of the father's bounty, instead of her husband. In effecting this purpose, the father caused his lands, which, in the language of the witness, Burke, he proposed to "give off" to his children, to be appraised. After this, on the 9th day of November, 1849, he conveyed, by deed of that date, to Stephen Marsh, husband of appellant, 480 acres of the lands thus appraised. The consideration recited in this deed, is the natural love and affection of said Pledger to his son-in-law, Marsh, and also the sum of $2,585 00.

On the same day, said Pledger also conveyed to said Stephen Marsh and John P. Marsh, by deed, a certain other tract of land, estimated at 80 acres, for the consideration, as recited in said last named deed, of $160 00, in hand paid by said Stephen Marsh to said Pledger.

The land thus conveyed to said Stephen Marsh, were valued at the sum of $4,800. But no money was really paid by said Marsh to said Pledger for them, at the time of the execution of the deed for the same, or at any other time, out of his own funds.

At the time the deeds of the 9th of November, 1849, were executed, Stephen Marsh made his promissory note, payable one day after date, to said Pledger for the sum of $2,215 00 ; on which note there was this indorsement : "The within note being given for land, it is to bear no interest until the final settlement of my estate. W. H. Pledger. November 9th, 1849." On the same day said Marsh also executed a receipt to Pledger for the sum of $2,585 00. But no money was really received. These two amounts make the sum of $4,800 00, which was the value fixed for the lands, conveyed by Pledger to said Stephen Marsh, as above said. The promissory note above said for the sum of $2,215 00, was cancelled on the 26th day of March,

1855, and a new note executed in its stead for the same amount, and upon like condition with the first.

The proof shows that said Pledger died in 1858, and directed in his will that the lands advanced by his deeds of the 9th November, 1849, should be valued at the sum of $2,955 00, and that Marsh should pay upon his note for $2,215 00 the sum of $1,845 00, upon which the note and receipt above said were to be given up to Marsh by the executor of Pledger.

On the final settlement of Pledger's estate, Mrs. Marsh, in the name of her husband, said Stephen Marsh, was charged with the sum of $2,955, as " advancement in land by testator," and " interest on same to 10th December, 1860, $770.92 ;" also, with the sum of $1,845, as " excess over share advanced by testator," and " interest from 10th December, 1860, $481." These sums, amounting to $4,800, with interest thereon to 10th December, 1860, as above, were deducted from Mrs. Marsh's distributive share of her father's estate, on the final settlement thereof. This settlement, so far as Mrs. Marsh is concerned, was made by her husband for her, and consented to and approved by him. He treated the land conveyed to him by Pledger, on the 9th November, 1849, as an advancement in lands to his wife, as to the amount of the $2,955 ; and he paid for the residue with her funds, derived from her father's estate, upon final settlement ; when his note and receipt were given up to him. This appears from the settlement and from the testimony of Burke. Pledger did not die until 1858, long after the adoption of the Code. Mrs. Marsh's distributive share of his estate was $7,593.98, which was her separate estate.—Code, § 1982 ; Revised Code, § 2371. The sum of $6,052.26 of this share was used by her husband, on the final settlement of her father's estate, to refund the advancement made by the deeds of the 9th November, 1859, and to pay the balance, directed by her father in his will, on her husband's note for $2,215, which grew out of the conveyance of the lands as above stated. This was an investment of the moneys of her separate estate in lands by her husband, who was her trustee.—Revised Code, § 2374. And although the title was taken in the husband's own

name, without any allusion to her, or express declaration of a trust for her benefit, the whole nature of the proceeding, and the evidence of Burke, show that it was intended and acknowledged by the husband as a transaction for her benefit, and as an arrangement to adjust an advancement made in lands to the wife, and to pay the note of her husband to her father, given in the consummation of this arrangement. It was throughout treated by the husband as his wife's affair, and not his own. And he so explained it to Burke, his brother-in-law, as fully and clearly appears in the evidence of that witness. This made the whole of the lands mentioned in the deed of Pledger, the father of Mrs. Marsh, to her husband of the 9th November, 1849, which was estimated at 480 acres, a part of her separate estate. And although this case does not declare an express trust in favor of Mrs. Marsh, yet, under the facts of the case, the law will imply one, and compel the husband to act in conformity with it, if he seeks to evade it. But in this case, he did not seek to evade the trust, but consented to it and declare it. A trust will be presumed if the parties intended a trust.—Adams' Dict. in Eq., pp. 33, 34, 35, *et seq.*, (marg).

No fixed form of words are necessary to create an advancement. It needs no technicalities in its expression, so it appears that it was a gift, by anticipation, of the whole or a part of what it is supposed a child will be entitled to on the death of the party making the advancement.—Revised Code, § 1898 ; 4 Bac. Abr., Bouv. 97 ; *Wilson's Heirs v. Wilson, Adm'r,* 18 Ala. 176. But if it is land or real estate it must be given by instrument in writing, in conformity with the statute upon that subject.—Revised Code, § 1862. Yet the trust need not be declared in the deed. Here more than one-half the purchase-money was paid at the execution of the deed, by the advancement to Mrs. Marsh, and the whole balance of the purchase-money was paid by her on the final settlement of her father's estate. This was sufficient to create a trust in her favor, though the legal title was in her husband.—*Kelley v. Freeman,* 1 Hoff. Ch. R. 90.

But this trust was never controverted by the husband,

but, on the contrary, it was fully admitted by him. The evidence of Burke proves this beyond all question. The land then mentioned in the deed of the 9th day of November, 1849, estimated at 480 acres, was a part of the separate estate of Mrs. Marsh, which had been received by her husband and held by him as her trustee.—Revised Code, §§ 2371, 2373.

On the 2d day of January, 1860, said Stephen Marsh and his wife, said Mary Ann Marsh, sold this 480 acres of land above named, to Geo. H. Strother, for the sum of $10,000 00 in gold, or its equivalent; which was received by the husband of Mrs. Marsh. The sale thus made was conducted after the formalities required by the Code, for the sale of the wife's separate estate. It was conveyed " by the husband and wife jointly, by instrument in writing, attested by two witnesses."—Revised Code, § 2373.

The $10,000 00 thus obtained by Marsh, was the proceeds of the sale of lands belonging to his wife's separate estate; and this, to the amount of $9,204 00, was re-invested by the husband in the lands belonging to the estate of her father, said Pledger, upon the sale by his executor of the realty of said estate. This is fully proven by Burke's deposition. The property in which this investment was made is also the separate estate of the wife.—Revised Code, § 2374.

Marsh, the husband of appellant, departed this life on the 1st day of November, 1865, leaving his widow in possession of said land, so purchased by him as above said. After the death of Marsh, Mrs. Marsh administered on his estate, and applied to have the same declared insolvent. In her application for this purpose, she returned the lands purchased by him at the executor's sale of said Pledger's estate, on the 21st day of January, 1860, as above said, under oath, as a part of the real estate of her husband, said Stephen Marsh, deceased; but afterwards abandoned her said administration of said estate, and retracted her said application of insolvency, upon the grounds that she had returned said lands, as the husband's property, upon a mistaken knowledge of the law in her own favor. This does not estop her from setting up her own right.

Thereupon she filed her bill against the appellees, who are the administrators and sons of said Stephen Marsh, deceased, and step-sons of appellant. On the hearing, the bill was dismissed for want of equity, and Mrs. Marsh appealed to this court.

Since the passage of the act of the 13th February, 1850, entitled "An act to alter and amend an act securing to married women their separate estates, and for other purposes, approved March 1st, 1848," the husband has been the trustee of the wife's separate estate; and he stands upon the same grounds as any other trustee, under the limitations and privileges fixed by the statute creating his office. He carries nothing of the powers of husband into his trusteeship, except what the statute gives him.—Revised Code, § 2372; Pamphlet Acts 1849–50, p. 62.

It is the universal law of trusts, that the trustee cannot use the trust funds for his own benefit. If profit arises from his use of them, it belongs to the beneficiary, and not to the trustee, unless the beneficiary, after the dissolution of the trust relation, permits him to enjoy such profits.—Lewin on Trusts and Trustees, 288, 289, (marg). There is no reason why this just doctrine shall not apply to the husband in its fullest extent, when he fills the office of trustee of his wife's separate estate. If it is the purpose of the law to deal fairly with her, his position of husband gives him no advantage over any other trustee, except as he derives it from the statute. "The power of a trustee over the legal estate, or property vested in him, properly speaking, exists only for the benefit of the *cestui que trust*."—2 Story Eq. § 977; Lewin on Trusts, p. 288, 289, (marg). Moreover, courts of chancery look only to the equities of the parties, and regard the holder of the naked legal title as trustee of all the parties equitably interested.

It is, therefore, an unvarying rule of equity, that if the trustee invests the moneys of the beneficiary in other property, the courts of chancery will follow it and hold such investment as a security for the repayment of the money thus invested, or decree the property itself to be the property of the beneficiary, and compel a conveyance to accomplish this purpose; unless the interests of *bona*

*fide* purchasers, without notice, intervene and demand protection.—2 Story Eq. § 977, *et seq. ;* Adams' Doct. in Eq., marg. pp. 33, 34, 35, 36, 37, 40, *et seq. ; Pool et al. v. Cummings & Co.,* 20 Ala. 563. But no such pretense is set up here. There is no purchaser involved in this transaction, and no one who has any right to complain. The creditors of Marsh have no right to satisfaction of their debts, except of his own estate ; and the separate estate of his wife is none of his.—Revised Code, § 2371. And his heirs and distributees stand in no better condition than himself. They only take what belonged to him, in his own right. Governed by these principles, we have not the slightest hesitancy in saying that the husband, as trustee of the wife, would be bound to account for the *corpus* of the wife's separate estate, received by him, and its increase by re-investment, on a dissolution of his trusteeship ; and his death is such dissolution of his trusteeship. And what he was liable to do, his administrator is liable to do for him.

It is contended, on the part of the appellees in this case, that the answers deny those allegations of the bill upon which the complainant's case is supported ; and that there is but one witness to overturn the force of this denial, and this is insufficient. This would be correct under the rules of equity evidence, in conformity to which the decisions relied on were made. But this case stands on a different basis. The legislature has changed, or very much modified, this rule, and set up a new one in its stead. The new rule is this : " When a bill is filed for any other purpose than discovery only, the plaintiff may waive in, or upon, the bill, the answer being made on the oath of the defendants, or either of them, and, in such case, the answer is entitled to no more weight as evidence than the bill.—Revised Code, § 3328. The answers in this case were put in without oath, under this new rule. Such answers are mere pleadings. They merely put in issue the allegations of the bill, and leave the question of proof in equipoise. This may be overturned by a single witness.— *Griffin v. State Bank et al.,* 17 Ala. 258 ; 35 Ala. 282.

But, in this case, the testimony of Burke, the only witness examined, is amply sustained by the proof of those

allegations of the bill not denied in the answers, such as the facts, that the lands named in the deeds of the 9th of November, 1849, were conveyed by the father of Mrs. Marsh to her husband, and charged to her as an advancement in land, so far as the two thousand, nine hundred and fifty-five dollars went; and so far as the residue was concerned, it was paid out of her separate estate to the amount of one thousand, eight hundred and forty-five dollars, which was the balance demanded on her husband's note, given to complete the arrangement in reference to the advancement. The final settlement of the Pledger estate shows this, and Marsh conducted this himself. One witness, and sufficient supporting circumstances, are enough. These circumstances are not denied, but admitted in the answers.—Gres. Eq. Ev. 4, 5, 156.

Certainly, in this case, the proofs show that there was a trust created in favor of Mrs. Marsh, and that her husband, her trustee, has so dealt with her funds to a very large amount as to endanger its total loss, without the intervention of a court of chancery.—2 Story's Eq. § 1201, and note 2. Mrs. Marsh was a married woman, her husband was her trustee, and a court of law can not afford adequate relief. In such a case, chancery is never fastidious to interfere and protect her rights.—2 Story's Eq. § 1327. The action of the court below was, therefore, erroneous.

The decree of the chancellor is, therefore, reversed, and this cause is remanded for further proceedings, in the court below, in conformity with this opinion. In which further proceedings, the lands conveyed by said Pledger to said Stephen Marsh, on the 9th day of November, 1849, will be treated as the separate estate of Mrs. Marsh, and the ten thousand dollars received for the sale of the same to Strother as the proceeds of the sale of her separate estate; and the payment of the purchase-money of the lands named in Burke's deed of the 21st day of January, 1860, to her husband, said Marsh, to the sum of nine thousand, two hundred and four dollars, will be treated as a re-investment in said lands for her benefit, if she chooses so to elect; but if she does not so elect to take the lands in lieu of her money, to the amount aforesaid, then said lands, or so much

as may be necessary for that purpose, will be sold, and out of the proceeds she will be paid said sum of nine thousand, two hundred and four dollars, and interest thereon since the death of her said husband, (said Stephen Marsh.)   An account will also be taken between the legal representative of said Stephen Marsh, deceased, and said Mary A. Marsh, in which the estate of said Stephen Marsh, deceased, will be charged with all the property and moneys belonging to her as her separate estate, which was received by him during his life, and not re-invested for her benefit, or used for the "purchase of articles of comfort of the household," except the "rents, income and profits thereof," up to the time of the death of him, said Marsh.   But interest on all funds of the wife's separate estate, uninvested and remaining in the husband's hands at his death, will be charged, since his death, against his estate.   The estate will be allowed all proper credits, and among these, credit will be allowed for the sum of eight hundred and fifty-five dollars, and interest thereon since the death of said Marsh, the sum named as the consideration or purchase-money for the lands referred to and meant in the deed set out in "Exhibit G" to complainant's bill, if it appears that the lands therein referred to are a portion of the lands named in the deed of Burke to Marsh, dated 21st day of January, 1860, set out as "Exhibit F" to said bill of complaint in this case, and the title thus passed was necessary to perfect the title conveyed in said deed of said Burke, but not if these facts are otherwise.

The said Stephen W. Marsh, as the administrator of the estate of said Stephen Marsh, deceased, will pay the costs of this appeal in this court, and in the court below, out of the estate of said Stephen Marsh, deceased, in his hands to be administered.