## KENLEY v. ROBB et al. (No. 130.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 21, 1916. On Rehearing, Jan. 24, 1917. Dissenting Opinion, Feb. 1, 1917. Plaintiff in Error's Petition for Rehearing Denied Feb. 21, 1917.)

### On Motion for Rehearing.

1. ACKNOWLEDGMENT ⬪36(1)—CERTIFICATE —SUFFICIENCY.

A certificate of acknowledgment before a notary public showing substantial compliance with the law under which it is made is sufficient.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. § 181.]

2. ACKNOWLEDGMENT ⬪36(2)—CERTIFICATE —SUFFICIENCY.

A certificate of acknowledgment of a conveyance before a notary public made under the law requiring that the subscriber shall be personally known to the officer or proved to be such by the oath of a credible witness, which fact shall be stated in the certificate, is insufficient where it merely recited that the subscriber was represented to the notary to be the identical person whose signature appeared as a witness to the transfer annexed; the language of the certificate tending to show that the notary was not convinced of the identity.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 188–191.]

3. VENDOR AND PURCHASER ⬪244—BONA FIDE PURCHASERS FOR VALUE—WHO ARE.

In an action of trespass to try title, evidence *held* to warrant a finding that a purchaser was an innocent purchaser for value, without notice of the transfer of the certificate under which plaintiff claimed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 609–611.]

4. EVIDENCE ⬪186(6)—SECONDARY EVIDENCE—ANCIENT DOCUMENTS.

Where records of a county are shown to have been destroyed by fire, recitals in sheriff's deed nearly 40 years old, which was an ancient instrument, are sufficient to show that the sale was made on execution under a valid judgment, and the deed cannot be excluded on the ground that it was only secondary evidence of the facts recited.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 667.]

5. EXECUTION ⬪127—LEVY—SALE.

Where the plaintiffs and defendants in each execution were the same, the sheriff might levy on the land to satisfy the three different executions.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 282–286.]

6. EXECUTION ⬪222(2)—SALE—NOTICE.

Where proper notice was given of a sale under one of three executions levied on land, in which the parties were the same, the sale was valid, though notice was not given under the other executions.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 631, 633.]

7. VENDOR AND PURCHASER ⬪251—VENDOR'S LIENS—WHAT CONSTITUTE.

Where a deed recited the payment of a cash consideration, notes which the grantors took up by deeding the land to the grantee cannot, because of a recital in the deed that they were of even date therewith, establish that they were a lien on the land.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 624–635.]

Brooke, J., dissenting.

Error from District Court, Montgomery County; L. B. Hightower, Judge.

Action by C. H. Kenley against H. L. Robb and others. From a judgment for defendants, plaintiff brings error. Affirmed.

Hill & Elkins and A. T. McKinney, all of Huntsville, for plaintiff in error. G. C. Clegg, of Trinity, and Dean, Humphrey & Powell, of Huntsville, for defendants in error.

BROOKE, J. This was an action in trespass to try title, brought by plaintiff in error against defendants in error. The cause was tried before the court without a jury, and resulted in a judgment that the plaintiff take nothing, the conclusion of the court being based upon the finding that there was an outstanding title, which prevented plaintiff's recovery.

Complaint is made by the first assignment of error, as follows:

"The court erred in holding that the certificate of acknowledgment to the transfer of the land certificate from John Andrews to William Penn was insufficient to charge constructive notice to defendants of the transfer of said land certificate, because said certificate of acknowledgment is valid, in due form, and in substance complies with the statute in effect at the date same was taken, and was sufficient to and did charge all of the defendants with constructive notice of the transfer of said land certificate from John Andrews to William Penn."

There was offered in evidence a certificate from the state of Texas to John Andrews to the land in controversy. Indorsed on this certificate was a transfer from John Andrews to William Penn, under whom plaintiff claims. The certificate of acknowledgment to this transfer reads as follows:

"State of Texas, Travis County.

"Before me, N. C. Raymond, a notary public in and for said county, duly commissioned and sworn, personally appeared B. F. Wright, who is represented to me as the identical B. F. Wright whose signature appears as a witness to the transfer hereto annexed, who upon his oath says that he was present and saw John Andrews sign the same as his voluntary act and deed, and that he acknowledged that he did so for all the uses, purposes, and considerations therein set forth and expressed; that he signed the same as a witness at the request of said parties thereto."

The trial court found as follows:

"I conclude as a matter of law that the transfer from John Andrews to William Penn was not properly authenticated for registration; that, if it should be held that such transfer was properly authenticated for registration, such registration was insufficient to charge purchasers under the heirs of John Andrews with constructive notice of any rights to the land in controversy in William Penn or others holding under him."

Said transfer of said certificate was recorded in the deed records of Trinity county on the 23d day of February, 1859, and rerecorded on August 9, 1915. Plaintiff claimed through William Penn, under said transfer of said certificate. Defendants claimed under conveyance from the heirs of John Andrews, dated November 30, 1876.

A brief review of the authorities on the proposition presented will be made.

Justice Wheeler, in the case of Deen v. Wills, reported in 21 Tex. 645, says:

"The objection is that the certificate of probate does not state that the witness signed as a witness at the request of the grantor. We do not think it essential to the validity of the registry that it should so state. That would be a more formal compliance with the direction of the statute in making the certificate. But the statute does not prescribe the form of the certificate, but only that the officer taking the proof shall make a certificate thereof. All that can be required is that the certificate shall contain the substance of the proof; and if it contains all that is essential to prove the due execution of the deed, it must be deemed a substantial compliance with the requirement of the statute. It is not essential to the proof of the due execution of the instrument that the witness should depose to the fact of his having signed at the request of the grantor. The presumption is that the subscribing witness did so sign, and the statement would add nothing to the legal effect of the certificate or the proof. In order to render the copy of a deed admissible in evidence under the statute, * * * it must have been admitted to record upon the requisite acknowledgment or proof; and the certificate of probate should afford evidence of the sufficiency of the proof. But if it does so substantially, though informally, that is all that ought to be required. The numerous adjudged cases upon the sufficiency of such certificates are collected in the note to Philip's Evidence, to which we have been referred by counsel for the appellant. 'All that is required (it is there said) in respect to the frame of these certificates is a substantial compliance with the law under which they are made. When substance is found, it is neither the duty nor inclination of courts to jeopardize titles, in any way depending upon them, by severe criticism upon their language.' Cow. & H. Notes, pt. 2, note 254 to page 247.

"Thus, where a certificate of proof stated that A. B. appeared before the officer and made oath, etc., but did not say that he was a subscribing witness, yet it appearing on inspection of the deed that A. B. was one of the subscribing witnesses, it was held by the Supreme Court of Pennsylvania that the certificate was substantially good. [Luffborough v. Parker] 12 Serg. & R. 48. So in Jackson v. Gumaer, 2 Cow. [N. Y.] 552, where it was objected to the certificate of the judge taking the acknowledgment that it did not state, as it was insisted the statute required, that he knew the grantor to be 'the person described in and who executed the deed,' the certificate was held good. Chief Justice Savage said: 'Were we called on to establish a form for such a certificate, I should certainly be for inserting that the grantor was known to the judge, or other officer taking the acknowledgment, to be the person described in the deed; but the Legislature could not expect the officer to know that the grantor described in the deed actually executed it, otherwise than by his acknowledgment, or proof by a witness. The practice in this case has been of very general use, and the practice in this respect may perhaps amount to a construction of the act. At all events I am unwilling to say that titles which depend for proof upon certificates thus drawn are to be put in jeopardy by the allowance of such a technical objection; for I cannot but consider the acknowledging officer drawing such a certificate as possessing all the knowledge required by the statute.' Id. [2 Cow. (N. Y.)] 567. So in McIntire v. Ward, 5 Bin. [Pa.] 296 [6 Am. Dec. 417], where an objection to the certificate of the acknowledgment of a deed by a married woman was that it did not state that the person taking the acknowledgment did 'read to the wife, or otherwise make known to her the full contents of the deed,' as the statute prescribed, but that the wife 'acknowledged the indenture of bargain and sale to be her act and deed, according to its true intent and meaning, and the land and premises therein mentioned to be bargained and sold, with all and every the appurtenances, to be the right, title, interest, estate, and property of the within named Samuel Todd, his heirs and assigns,' it was held a substantial compliance with the statute, and therefore sufficient. Considering the whole of the certificate (the court said) it sufficiently appeared that the contents of the deed were known to the wife. She knew that the land was conveyed to Todd in fee simple, which was the essential part of the deed, and it might be fairly presumed that this was communicated to her by the justices who took her acknowledgment, although, it was said that was not material, provided it appeared that she had the knowledge. Id. [5 Bin. (Pa.)] 301, 302, per Tilghman, C. J.

"These references will suffice to show that such certificates are liberally construed, and that a substantial compliance with the law is all that is required in these cases. And that, we think, appears by the certificate in this case. To require more might seriously jeopardize the security of titles; and there can be no good reason assigned why more should be required."

Justice Roberts, in the case of Monroe v. Arledge, 23 Tex. 479, used the following language:

"The main questions in this case arise under the following article of the registry act of 1846: 'That the acknowledgment of an instrument of writing for the purpose of being recorded shall be by the grantor, or person who executed the same, appearing before some officer authorized to take such acknowledgment, and stating that he had executed the same for the consideration and purposes therein stated; and the officer taking such acknowledgment shall make a certificate thereof, and sign and seal the same with his seal of office.' Hart. Dig. art. 2790.

"In the authentication of one of the deeds offered in evidence the word 'consideration,' contained in this article, was omitted, and on that account the deed was excluded from the jury as not having been duly authenticated for record. A literal compliance with the statute is not required in authenticating instruments for record, provided there has been a substantial compliance. There must always be such a compliance as meets the object of the requirement in the statute. The object sought to be attained mainly in the authentication of an instrument for record is the ascertainment of the fact that the grantor did execute it. When it is authenticated by the proof of a witness who saw it executed, it is only necessary for him to state on oath that he saw the grantor 'subscribe the same,' without stating anything about the consideration. Hart. Dig. art. 2791. It is not necessary to the validity of a deed that the real consideration upon which it is made, should be 'therein stated'; and indeed such is very often not the case. Nor would an acknowledgment by him for record, in strict compliance with the statute, preclude him from showing, that the consideration and purposes of the deed, were other and different from those therein stated. The material matter, then, embraced in the acknowledgment, is the execution of the deed. In this case the grantor is shown, by the certificate, to have acknowledged that he executed the deed for the purposes therein stated. The deed itself must import a consideration, if none be expressed; and if one be expressed, it is not material that the one expressed be the one upon which it was actually made. This, then, is a formal part of the certificate, which, for the sake of regularity, should be inserted, but its omission does not invalidate the certificate. We are of opinion that the court erred in excluding the deed on account of this omission.

"Under the same article of the statute a deed was objected to as inadmissible in evidence because the notary public, in making his certificate, said, 'Witness my hand and *seal*,' instead of '*official seal*.' The court overruled this objection, and, as we think, correctly. The manner in which the objection is made shows that the notarial seal was impressed upon the instrument, and that it is as plainly indicated to be his 'seal of office' by the expression '*his seal*,' as by that of his '*official seal*.' The whole instrument purports to be a notarial and not a private act; and there could be no pretense that the seal used was a private seal."

Chief Justice Roberts, in the case of Belcher v. Weaver, reported in 46 Tex. 293, 26 Am. Rep. 267, uses the following language:

"The general rule upon this subject is that there must be a substantial, though not a literal, compliance with the terms of the statute, and that, although words not in the statute are used in the place of others that are, or words in the statute are omitted, yet, if the meaning of the words used is the same, or they represent the same fact, or if the omission of a word or words is immaterial, or can be supplied by a reasonable and fair construction of the whole instrument, the certificate will be held sufficient. Monroe v. Arledge, 23 Tex. 478; Dennis v. Tarpenny, 20 Barb. [N. Y.] 376; Owen v. Norris, 5 Blackf. (Ind.) 479; [Stevens v. Doe] 6 [Blackf. (Ind.)] 476; Pardun v. Dobesberger, 3 Port. (Ind.) 389; Gregory's Heirs v. Ford, 5 B. Mon. [Ky.] 481; Langhorne v. Hobson, 4 Leigh (31 Va.) 224.

"There may occasionally be found cases in which there has been, in following this rule, a very strict construction of the words used. Bogkin v. Rain, 28 Ala. 332 [65 Am. Dec. 349]; Ala. L. I. Co. v. Bogkin, 38 Ala. 510.

"It is contemplated by the enacting clause of the statute that after the deed has been fully explained to her, and she has declared that she signed it freely and willingly, she should then acknowledge the deed to be her act. This may be designed as a means of impressing upon her that she has not made it her deed, by having it signed previously, but that she is now doing that which makes it her deed, by acknowledging it to be her act.

"In this certificate what is termed the declaration and the acknowledgment are blended together by the expression that 'she, Ellen Belcher, acknowledged that she signed the said deed, without any bribe, threat, or compulsion from her husband,' etc. If we examine the whole instrument, we will find that the officer, in taking the acknowledgment of the husband, Woody Belcher, used the expression, 'The said Belcher signed the said deed.' He used the word 'signed' instead of the word 'executed,' which is used in the statute. Paschal's Dig. art. 5007. He doubtless did not know the difference in the two words, but regarded them as meaning the same thing, and therefore used the word 'signed' in the sense, as he understood it, of 'executed.' So, too, when he said that the wife acknowledged that she signed the deed and wished not to retract it, he understood himself as conveying the meaning that she acknowledged that she executed the deed. To say that a person signed a deed would be understood generally by those not versed in legal phraseology as being the same as that he executed a deed.

"In addition to this, the law itself is not entirely free from confusion, not only from the important differences in the language of the enacting clause and the form prescribed, as has been shown, but also in making nominal divisions in the parts of this transaction, without any well-defined designation of the parts of it consistently adhered to in the enacting clause, and in the form; for, if what is pointed out in the privy examination, and in the declaration, has been fully performed, it might be difficult to perceive that all had not been done which was necessary to include also a substantial acknowledgment of the deed as being her act.

"It follows, then, that any artificial distinctions being made for the purpose of showing that one of the nominal parts are not specifically embraced, or that one part is defectively stated, will not avail, if from the evident sense of the whole instrument a reasonable conclusion can be arrived at that the requisites of the law have been complied with."

Justice Stayton of the Supreme Court, in passing on the matter in the case of Watkins v. Hall, 57 Tex. 1, said:

"It is claimed that the court erred in permitting certain deeds to be read in evidence, because they had not been properly recorded. The objection taken to the record of the deeds was that they had not been properly acknowledged. The form of acknowledgment, so far as brought in question in this cause, is as follows: 'Before me, R. P. Jones, a notary public in and for said county and state, came Samuel Welchel, to me well known, and acknowledged he signed and delivered the foregoing deed for the consideration and purposes therein stated.' It is claimed that the certificate of acknowledgment is insufficient, in that after the word 'known' the words 'to me to be the person whose name is subscribed to the foregoing instrument were not added.

"The statute gives a form for the certificate of acknowledgment which officers in taking acknowledgments should use, but it does not provide that a certificate substantially the same as that given shall not be sufficient, but, upon the contrary, provides that: 'Any officer taking the acknowledgment of a deed or other instrument of writing must place thereon his official certificate, signed by him, and given under his seal of office, substantially in form as hereinafter prescribed.' R. S. 4311. The form prescribed by the statute is as follows: 'The State of ——, County of ——. Before me (here insert the name and character of the officer), on this day personally appeared ——, known to me (or proved to me on the oath of —— ——) to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and considerations therein expressed.'

"The law regulating acknowledgments of instruments for record under the Revised Statutes, except in the form above set out, is the same as under the former law. R. S. 4308; Pasch. Dig. 5007. The law in force prior to the adoption of the Revised Statutes did not require the certificate of the officer before whom the acknowledgment was made to show that the person who made the acknowledgment was known to the officer taking the same; but it provided that, if such person was unknown to the officer, his identity should be proved by his own affidavit, or by witnesses known to the officer, which proof or affidavit had to be indorsed upon the instrument of writing by the officer taking the acknowledgment. Pasch. Dig. 5010. In addition to the requirements of the former law, the law now requires the certificate of the officer to show, if it be the fact, that the person making the acknowledgment is known to the officer to be the person whose name is signed to the instrument; and a certificate which substantially shows that fact is in compliance with the statute. In the certificates of acknowledgment objected to in this cause it is stated that the persons whose names are given were well known to the officer, and that such persons acknowledged that they signed and delivered the instruments. This declaration of the officer that the person making the acknowledgment is well known to him, the name of such person being given in the certificate, that name being the same as is signed to the instrument, coupled with the declaration

that such named person, well known to the officer, acknowledged that he executed the instrument, identifies the party so executing; and such a certificate is a substantial compliance with the statute; for it carries with it evidence that the officer knew personally that the person who executed the instrument was the person whose act the deed or other instrument purports to be."

The Supreme Court said, in Mullins v. Weaver, 57 Tex. 5:

"The particular objection urged to this certificate of acknowledgment is the omission of the words 'sealed and delivered' after the word 'signed.' Article 1003, Paschal's Digest, was the statute then in force, and used the term 'willingly sign and seal the said writing,' whereas in the form therein prescribed the following term is used: 'Willingly signed, sealed, and delivered the same.' And it is also provided that any certificate showing that the requisites of the law had been complied with should be as valid as the form there prescribed. For two reasons it was not essential to use in that part of the certificate of acknowledgment the word 'delivered.' In the first place, it is shown in the certificate that the husband, G. W. Scott, had delivered the deed; in the second place, while the word is used in the form of the certificate as given, it is not required by law, nor is the use of that word in the certificate necessary to constitute it a valid acknowledgment.

"In the case of Belcher v. Weaver, 46 Tex. 295 [26 Am. Rep. 267], Chief Justice Roberts, commenting upon this statute, said: 'The word "freely" may be omitted in the certificate, because it is omitted in the form. The word "seal" may be omitted, because when this deed was made a seal was not necessary. The words "and deed" in connection with "act" may be omitted, because, though in the form, it is not in the same connection in the enacting clause. So the word "delivered" is in one, but not in the other.'

"It is admitted by counsel in their brief that the use of the word 'sealed' was not necessary to constitute it a valid acknowledgment. But it is claimed that the certificate must use the word 'delivered.' This, however, it has been seen, is not essential to a valid certificate of acknowledgment.

"A certificate of acknowledgment of a married woman to her deed, showing that the statute has been substantially complied with, is sufficient. The acknowledgment is required for her protection against the undue influence of the husband; and to do this the lawmaking power requires that she shall be examined privily and apart from her husband, and that the deed shall be explained to her; that is, the officer, in the absence of the husband, shall so explain the deed that the wife will understand its import and effect, and that she shall then declare to the officer that she freely and voluntarily signed the deed, and did not wish to retract it. When the certificate shows that these things have been done, without regard to the particular language used by the officer, the object and purpose of the law has been attained. This certificate shows that the deed was fully explained to her by the officer separate and apart from the husband, and that she acknowledged that she had signed the same as her voluntary act and deed, and did not wish to retract it. Now, notwithstanding the acknowledgment was taken before the passage of the act dispensing with the use of seals, and the word 'sealed,' although used in statute and form, was omitted from the certificate, nevertheless she declared that she had signed the deed, and the scroll appears appended to her name, and is acknowledged in the body of the deed as a seal. It could not be held that the omission of the word from the certificate could vitiate it, because it does show that all the substantial elements of the statute made for her protection have been fully complied with."

The Supreme Court also, in the case of Sowers v. Peterson, 59 Tex. 216, used the following language:

"The alleged defect consisted in the fact that the certificate of the officer showed on its face that the grantor had been made known to him, but that the officer failed to indorse on the deed, as he should have done, the proof by which he was made known to him, and by which his identity was established to his satisfaction. Hart. Dig. art. 2793; volume 1, Pasch. Dig. art. 5010.

"Section 10 of the act of the 12th of May, 1846 (Hart. Dig. art. 2793), provides in cases where the grantor, who appears before the officer for the purpose of making the acknowledgment necessary to allow the deed to be recorded, is unknown to the officer, that he may require proof of his identity with the grantor named in the deed the execution of which he desires to acknowledge. This proof can be made by the affidavit of the grantor himself, or by witnesses who can identify him. The statute requires the proof of identification to be indorsed on the instrument. The objection is that in this case the grantor was unknown, and, though made known to the officer, the proof of his identity was not indorsed by the officer on the deed as required by statute.

"It is not clear from the certificate of the officer that the grantor, Akin, was in fact entirely unknown to him. He does not expressly say so in his certificate. In the deed, which is signed by himself and his wife, Elvira, he is described as a resident of Dallas county, where the deed was made. The grantee is also described as a citizen of the same county. It appears to have been an ordinary sale of a small tract of little value, between the parties, all citizens of the same county. The clerk in his certificate states that the grantor appeared before him in person, and states that he was made known to him; where, and by what means, or on what occasion, he does not state. Such a statement does not necessarily imply that the grantor was entirely unknown to him, or was an utter stranger whom he had never seen before. But, assuming that it was the fact that the grantor was up to the date of the acknowledgment entirely unknown to the officer, yet it is evident that by some means, and we must presume they were proper and lawful, the officer took the necessary steps to identify the grantor before taking his acknowledgment, and did identify him. The mere fact that he failed to indorse the proof of identity, after he had obtained it, on the deed, would not vitiate the record, if the proof of identity was in fact made, and the acknowledgment, as required by the statute, taken.

"The statute, it is true, makes it the duty of the officer in such cases to indorse the proof of identity on the deed, and he should always do so, but it does not prescribe that, without this indorsement, the deed shall not be admitted to record. Hart. Dig. § 2790; Pasch. Dig. 5007. All that is necessary to admit the deed to record, when the acknowledgment is made, as in this case, by the grantor, is for him to appear before the proper officer and solemnly state that he executed the deed for the consideration and purposes therein stated. When the deed is thus acknowledged, it becomes the bounden duty of the proper officer to record it. Hart. Dig. art. 2787; volume 1, Pasch. Dig. art. 5004. This he must do whether the affidavit of identity, which ought on such occasions to be attached, is so attached or not.

"In construing this statute, this court, in Monroe v. Arledge, 23 Tex. 479, held that a strict and technical compliance with the letter of the statute was not necessary. All that was required to admit the instrument to record was a substantial compliance with the requirements of the act. In the case above cited the court held that an acknowledgment that omitted

to state that it was executed for 'the considera-tion' stated in the deed was good. So, no doubt, an acknowledgment under this act (1846) would be good which omitted the word 'purposes' from the acknowledgment, or that omitted both the words 'consideration' and 'purposes.'

"We think that under the act of 12th of May, 1846, under which the acknowledgment in question was taken, it must be held to be a substan-tial compliance with the statute. Watkins v. Hall, 57 Tex. 3; Mullins v. Weaver, 57 Tex. 6. The evidence also, in the further progress of the trial, disclosed the fact that both parties held under the grantor, Akin, and derived their title from him as a common source. The deed was was properly admitted in evidence."

Justice Brown, in the case of Lindley v. Lindley, 92 Tex. 446, 49 S. W. 573, wrote as follows:

"The acknowledgment in question is in these words: 'State of Texas, Hopkins County. Be-fore me, A. P. Landers, clerk of the county court of Hopkins county, Texas, on this day personally appeared Wesley Sutton, known to me by introduction by C. W. Deems to be the person whose signature is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed. Given under my hand and official seal, at Sulphur Springs, Texas, this 27th day of June, 1884. A. P. Landers, Clerk County Court, Hopkins County, Texas. [Seal.]'

" 'Question: Does the acknowledgment sub-stantially comply with the statute (Rev. St. 1895, art. 4620), so as to render it a valid acknowledgment?' We answer 'Yes.' The du-ties of all officers in taking and certifying ac-knowledgments of instruments for registration are tersely prescribed in the following articles of the Revised Statutes of 1895:

" 'Art. 4616. The acknowledgment of an in-strument of writing for the purpose of being recorded shall be by the grantor or person who executed the same appearing before some officer authorized to take such acknowledgment, and stating that he had executed the same for the consideration and purposes therein stated; and the officer taking such acknowledgment shall make a certificate thereof, sign and seal the same with his seal of office.

" 'Art. 4617. No acknowledgment of any in-strument of writing shall be taken unless the officer taking it knows or has satisfactory evi-dence on the oath or affirmation of a credible witness, which shall be noted in his certificate, that the person making such acknowledgment is the individual who executed and is described in the instrument.'

" 'Art. 4619. Any officer taking the acknowl-edgment of a deed or other instrument of writ-ing must place thereon his official certificate, signed by him and given under his seal of office, substantially in form as hereinafter prescribed.

" 'Art. 4620. The form of an ordinary certifi-cate of acknowledgment must be substantially as follows: "The State of ——, County of ——. Before me, —— (here insert the name and character of the officer) on this day per-sonally appeared ——, known to me (or prov-ed to me on oath of ——) to be the person whose name is subscribed to the foregoing in-strument, and acknowledged to me that he ex-ecuted the same for the purposes and consid-eration therein expressed. Given under my hand and seal of office this —— day of ——, A. D. ——. ——." '

"All officers who are authorized to take and certify acknowledgments to and proof of in-struments for registration are required to take the oath of office prescribed by the Constitu-tion and to give bonds for the faithful perform-ance of their duties, and each official act in tak-ing such acknowledgment is done under the sanction of the official oath, and upon the offi-cial responsibility of the officer so acting. It is the policy of our statutes to require each officer to comply with the requirements of the law in taking acknowledgments to such instru-ments, and to make a certificate of the facts which shall show such compliance. The law has not prescribed the extent of acquaintance which is necessary to justify an officer in certi-fying that the person who presents himself is known to the officer to be the person who sign-ed the instrument in question; but that question is, and necessarily must be, submitted to the decision of each officer, under the facts as they existed at the time the act is done. When such officer has determined, upon the evidence presented to him, that he identifies the person in question as being the same that executed the in-strument under consideration, and when he so certifies according to law, the certificate must be held to be sufficient, unless upon its face it shows that in fact the statement of such knowl-edge is untrue.

"The words 'by introduction by C. W. Deems,' in the acknowledgment submitted, are surplus-age, and may be stricken out without affecting the meaning or validity of the certificate. They do not show that the introduction was the only means of knowledge possessed by the officer at the time, and it may be, and doubtless is, true that there were other circumstances known to the officer which, concurring with the intro-duction, served to satisfy his mind upon the question. Sowers v. Peterson, 59 Tex. 218. If Landers, the clerk, was satisfied that Sutton was the same person whose name was signed to the deed, he could properly certify as required by law, whether his acquaintance was limited to an hour or extended to the period of a year. We do not intend to hold that a mere introduc-tion is sufficient to authorize the official to make the certificate that the person introduced is known to him (the officer); but if he be satisfied, and make the certificate, the fact that he ex-pressed in that certificate that the person was so introduced will not invalidate the official act, which would otherwise be valid."

In the case of Wren v. Howland, Chief Justice Fisher of the Court of Civil Appeals, in 33 Tex. Civ. App. 87, 75 S. W. 894, speaks as follows:

"The acknowledgment is as follows: 'State of New York, City and County of New York. I, Gordon L. Ford, a commissioner in said state, appointed by the Governor of the state of Tex-as to take and administer oaths and affirma-tions, and to take the acknowledgment and proof of deeds to be used and recorded in said state of Texas, do hereby certify that this day Louis B. Reed, Jr., personally appeared before me, and, being duly sworn, saith that Abram M. Gentry, whose signature appears to the annexed instrument of writing, acknowledged same to be his act and deed, for the considerations and pur-poses therein expressed, and that he, with John Sessions, the other witness, subscribed their names as witnesses thereto at the request of the same Abram M. Gentry. In testimony whereof, I hereunto set my hand and official seal, this 17th day of December, 1858. [Signed] Gordon L. Ford, Commissioner for Texas in and for the State of New York.'

"The eighth section of the act of May 12, 1846 (Laws 1846, p. 237; Hart. Dig. art. 2791), under which this acknowledgment is taken, reads as follows: 'That the proof of any instru-ment of writing, for the purpose of being record-ed, shall be by one or more of the subscribing witnesses personally appearing before some offi-cer authorized to take such proof, and stating on oath that he or they saw the grantor or per-son who executed such instrument, subscribe the same, or that the grantor or person who exe-cuted such instrument of writing acknowledged in his or their presence that he had subscribed and executed the same for the purposes and

consideration therein stated, and that he or they had signed the same as witnesses, at the request of the grantor or person who executed such instrument, and the officer taking such proof shall make his certificate thereon, sign and seal the same with his official seal.' The effect of the certificate is to state that the grantor, Gentry, acknowledged and admitted to the subscribing and officiating witness, Louis B. Reed, that he (the grantor) had subscribed and executed the deed for the purposes and consideration therein stated. This brings it within the terms of the statute as quoted. It was not required by the act in question that the certificate should state that the subscribing witness was known to the officer taking the acknowledgment. Sowers v. Peterson, 59 Tex. 216; Watkins v. Hall, 57 Tex. 1; Cook v. Cook [5 Tex. Civ. App. 30], 23 S. W. 927."

Article 6806, Vernon's Sayles' Texas Civil Statutes, reads as follows:

"*Proof of Instrument by Witness.*—The proof of any instrument of writing for the purpose of being recorded shall be by one or more of the subscribing witnesses personally appearing before some officer authorized to take such proof, and stating on oath that he or they saw the grantor or person who executed such instrument subscribe the same, or that the grantor or person who executed such instrument of writing acknowledged in his or their presence that he had executed the same for the purposes and consideration therein stated, and that he or they had signed the same as witnesses at the request of the grantor or person who executed such instrument; and the officer taking such proof shall make a certificate thereof, sign and seal the same with his official seal." Act May 12, 1846, § 8; P. D. 5008.

The above authorities settle the question beyond the peradventure of a doubt and in favor of the contention of plaintiff in error. We are persuaded that the certificate under consideration is in substantial compliance with the statute, and that the court erred in holding that the same was insufficient. Therefore the assignment is sustained.

Plaintiff in error's second, third, fourth, fifth, and sixth assignments are as follows:

(a) The court erred in holding that the deed from Margaret Frisby by R. A. Clifton, sheriff, to H. N. Jones and S. Y. Smith, was sufficient to show an outstanding title against plaintiff, because said deed is not admissible in evidence as against the plaintiff, nor are the recitals therein admissible against plaintiff, because said deed and the recitals therein are hearsay as to plaintiff, and he is not bound by said deed nor the recitals thereof.

(b) The court erred in holding that the deed from Margaret Frisby by R. A. Clifton, sheriff, to H. N. Jones and S. Y. Smith, was sufficient to show an outstanding title against plaintiff, because the said deed and the recitals therein are insufficient to show that any valid judgment was ever rendered against the said Margaret Frisby, or that the various legal requirements necessary to a valid sale by said sheriff were ever complied with.

(c) The court erred in holding that the deed from Margaret Frisby by R. A. Clifton,. sheriff, to H. N. Jones and S. Y. Smith, was sufficient to show an outstanding title against plaintiff, because the recitals in said deed affirmatively show that the sale of said land referred to in said deed was made under three certain executions out of the county court of Trinity county on three judgments, and that there was no notice given of the date and place of sale, under either of said judgments, and the recitals in said deed show that said sale, if any, was not made under any or either of said judgments at one and the same time, and was therefore invalid.

(d) The court erred in holding that the deed from Margaret Frisby by R. A. Clifton, sheriff, to H. N. Jones and S. Y. Smith, was sufficient to show an outstanding title against plaintiff, because the recitals in said deed affirmatively show that no notice of sale ,was ever given of the time, place, and manner of said sale, and the same is therefore invalid.

(e) The court erred in holding that the deed from Margaret Frisby by sheriff to Jones and Smith showed an outstanding title against plaintiff, because the proof shows that Margaret McDonald bought the land in controversy from A. J. Frisby and wife, Elizabeth Frisby, and executed her notes in payment for said land in the sum of $4,555, payable to B. F. Wright and O. L. Taylor, and at the time of said sheriff's sale and deed the said notes were outstanding and a valid lien against said land for the amount thereof, and that the superior legal and equitable title to said lands was in the holder of said notes to secure the payment of same, and that afterwards the said Margaret McDonald, then Margaret McDonald Frisby, wife of A. J. Frisby, joined by her husband, A. J. Frisby, conveyed said land to J. Lyle Smith, administrator of the estate of B. F. Wright, and to Clement Penn and O. L. Taylor and wife, Francina Taylor, in settlement of the amount due on said notes, and that the effect of said transaction was to vest in Smith, as administrator of the estate of B. F. Wright, and Clement Penn, O. L. Taylor and wife, Francina Penn, the legal title. to the premises in controversy; that plaintiff acquired title of said B. F. Wright, Clement Penn, O. L. Taylor, and Francina Penn against the title, if any, conveyed by sheriff's deed; that plaintiff has the superior title to said premises, and said sheriff's deed did not and could not vest the title out of said Margaret McDonald as against the holder of said notes and as against this plaintiff.

The propositions are that no judgment or other order was shown to authorize the execution of this deed, that the recitals in the deed affirmatively showed that the sale of land was made under three certain executions, and that there was no notice given of the time and place of sale under either of said judgments, and recitals in the deed show that said sale was not made under either one of the judgments at one and the same time, and that at the time said sale was made there were outstanding vendor's lien notes, and a valid lien against the land, and that the superior legal and equitable title was in the

holder of the notes to secure the payment of same.

The sheriff's deed reads as follows:

"By virtue of three certain executions issued out of the county court of Trinity county in favor of F. C. Roberts v. A. J. Frisby and Margaret Frisby on three certain judgments rendered on the 6th day of October, 1868, and directed and delivered to me, R. A. Clifton, as sheriff of Trinity county, Texas, commanding me of the goods and chattels, lands and writ specified, I, R. A. Clifton, sheriff as aforesaid, did upon the 9th day of October, 1868, levy on and seize all the estate right title and interest which the said defendant Margaret Frisby on the 9th day of October, 1868, so had of, in and to the premises hereinafter described, and on the first Tuesday of November, 1868, within the hours prescribed by law, sold said premises at public vendue in the county of Trinity at the time and place of such sale, etc., and whereas at said sale the said premises were struck off to H. N. Jones and S. Y. Smith for the sum of $322.00 and in consideration of the premises aforesaid and the payment of said sum conveys to said H. N. Jones and S. Y. Smith 'all that tract or parcel of land lying and being situated in the county of Trinity and state of Texas, and known as the Penn tract of land, lying on the Trinity river in said county, the metes and bounds of which are as follows: [Here follows field notes]—containing 1,020 acres of land, more or less. * * *'"

This deed is dated November 4, 1868, and acknowledged by R. A. Clifton, sheriff of Trinity county, Tex., before Chas. A. Teagarden, clerk of the county court, Trinity county, Tex., on May 21, 1869, and was filed for record March 8, 1870, at 11 o'clock a. m. and recorded in Book F, pages 111, 112, and 113, of the Deed Records of Trinity County, and was refiled for record December 1, 1875, and recorded at Book B, pages 255 and 256, of the Deed Records of said Trinity County, Tex.

In the case of Howard v. North, 5 Tex. 311, 51 Am. Dec. 769, Chief Justice Hemphill used the following language:

"Several exceptions were taken to the admissibility of the deed of conveyance, in evidence. One is that it purports to be founded upon an execution issued and tested March 18, 1845; whereas the execution in the record is issued and tested May 5th. The statute directs the sheriff, after sale has been made and the terms complied with, to execute and deliver a conveyance to the purchaser; but does not prescribe the facts which shall be stated in the deed, or that the authority under which the sheriff acted, shall be recited. The recital in the deed is not made by the statute, nor is it on general principles of law, a substantial and efficient part of it; nor is it evidence of facts recited in it, except between the immediate parties to it. In Harrison v. Maxwell, 2 N. & McR. 347, the deed from the sheriff recited that the execution had issued from the court of one district, when, in fact, it had issued from a court of another. It held that this misrecital was not fatal to the title. The legal effect advantages in recitals in deeds were stated in the opinion of the court. The usage of incorporating in a sheriff's deed a recital of the authority under which he sold was commended as productive of great convenience, as well to the sheriff, as to the purchaser. It would point the former to his authority to sell, and would facilitate the latter in deriving his title; but it was held to be not indispensable. The recital of the power to sell and convey did not give the right; nor was it evidence of the right. * * *

"The misrecital of a judgment in a sheriff's deed is not material when, in fact, it appears that the sale was under a subsisting judgment and execution; a recital not being a material part of the deed. * * * There must be a subsisting judgment and execution, under which the sale is to be made, but, as the recital of either is not material, so a mistake will not affect the title."

It does not appear from the recitals in the deed that any valid judgment was ever rendered against Margaret Frisby, or that any of the legal requirements necessary to a valid sale by the sheriff were complied with. The sheriff does not even state "that notice was given of the time and place of the sale, as required by law." The proof shows that Margaret McDonald bought the land in controversy from A. J. Frisby and wife, Elizabeth Frisby, and executed her notes in payment for said land, in the sum of $4,555, and that at the time of the said sheriff's sale and deed the said notes were in the hands of B. F. Wright and O. L. Taylor, and were outstanding, and that they were a valid lien against the land for the amount of the notes. The proof further shows that afterwards Margaret McDonald married A. J. Frisby, and she, joined by her husband, conveyed the land to B. Lyle Smith, administrator of the estate of B. F. Wright, and to Clement Penn and O. L. Taylor and wife, Francina Taylor, in settlement of the amount due on the notes, on the 12th day of June, 1869. The parties, it seems, who claimed under this sheriff's deed did not appear at the trial of this case and filed no answer, nor have they asserted any title, right, or claim to the property for nearly 40 years. This is merely a circumstance. We are of the opinion that the testimony was not sufficient to show an outstanding title in the parties claiming under the sheriff's deed. These assignments are therefore sustained.

It is contended by the seventh assignment of error that the evidence showed a complete and perfect chain of title in plaintiff, and fails to show any title in defendants.

We have heretofore set out the certificate granted to John Andrews, and the transfer of said certificate to William Penn. From this record it appears that Clement Penn and Francina Penn Taylor were the only heirs of William Penn, and that they conveyed in 1861 to A. J. Frisby; that Frisby and wife conveyed to Mrs. McDonald. These two deeds were not filed for record until August 9, 1875. As above stated, in 1860 it was sold under execution against Mrs. McDonald. She had never paid for the land, having married after she acquired title, and there were outstanding notes against the property. She married Frisby, and she and Frisby conveyed to J. Lyle Smith, administrator of the estate of B. F. Wright, and the heirs of Wright conveyed to plaintiff in the case. The outstanding title in this case consists of the deed by the sheriff to Jones and Smith.

It was held by the lower court that, even

if the acknowledgment to the transfer of the certificate was good, the same was not notice. As the defendants claimed under the heirs of John Andrews, it was necessary, in order for them to recover, to show that they were innocent purchasers for value without notice of the conveyance of the certificate by John Andrews to William Penn. There is no evidence in this record or attempt to show that they were innocent purchasers, save and except the instruments themselves, and as the defendants themselves had before them at the time of the purchase of their title the certificate under which the land in controversy was located for William Penn, and the conveyance of same, and the patent which is located by virtue of this certificate.

In the case of Watkins v. Edwards, 23 Tex. 443, Chief Justice Wheeler uses this language:

"To entitle a subsequent vendee to have a prior unregistered conveyance, postponed to his subsequent conveyance, it must appear: (1) That he was a purchaser bona fide; (2) that he purchased without notice, actual or constructive, of the title to the prior vendee. It must appear that the purchase money was bona fide and truly paid; a recital of that fact in the deed is not sufficient. It must be proved by evidence independently of the recitals in the deed. That this is necessary to support the plea of innocent purchaser is well settled. Nolen v. Gwyn, 16 Ala. 725; High v. Batte, 10 Yerg. [Tenn.] 335; Hardingham v. Nicholls, 3 Atk. 304; Jewett v. Palmer, 7 Johns. Ch. [N. Y.] 65 [11 Am. Dec. 401]; Williams v. Hollingsworth, 1 Strob. Eq. [S. C.] 103 [47 Am. Dec. 527]; Bonne v. Chiles, 10 Pet. 177, 211 [9 L. Ed. 388]. As between the parties, in a suit for the specific performance of an agreement to convey, a recital in the agreement that the purchase money has been paid may be sufficient prima facie evidence of the fact. Short v. Price, 17 Tex. 397. But it is otherwise as to third persons whose rights are to be thereby affected. The recital is not evidence against them, but is considered as but the declarations of a stranger. The defendants introduced no evidence of the payment of the purchase money, or of any consideration given for their purchase; in this essential particular the plea of innocent purchaser was wholly unsupported by evidence.

"But further, to sustain the plea of innocent purchaser, the subsequent purchaser must have purchased without notice, actual or constructive, of the prior title or conveyance. Hart. Dig. art. 2777; 4 Kent, Com. 456; 7 Johns. Ch. [N. Y.] 65 [11 Am. Dec. 401]; Dixon v. Lacoste, 1 Smedes & M. [Miss.] 70; McCaskle v. Amarine, 12 Ala. 17. It is no objection to the validity of a deed or conveyance, under the statute, that it is not recorded, except as to creditors and subsequent purchasers. If not recorded, it is good and effectual to pass the title, as against the grantor and his heirs and devisees. 'Registration,' says the statute, 'as between the parties and their legal representatives, and all subsequent purchasers and creditors, with actual notice, or reasonable information of the grant, deed or instrument, shall not be deemed requisite, in order to its full effect, validity, and priority, according to its intrinsic nature.' Hart. Dig. art. 2777. Notice of the unregistered deed or conveyance, by the subsequent purchaser, previous to his purchase, will countervail the effect of the prior registry of his deed, and destroy his pretensions, as a bona fide purchaser. Registration, it has been said, was designed to furnish a substitute for livery of seisin, which had been dispensed with. It furnishes the means of information as to the state of the title, by the use of proper diligence, and amounts to constructive notice, or sufficient notoriety, or information reasonably sufficient to protect honest purchasers against prior secret conveyances and fraudulent incumbrances. And it is well settled in this country, and in England, that the notice of title given by possession is equivalent to the constructive notice afforded by registration of the deed. McCaskle v. Amarine, 12 Ala. 17; Dixon v. Lacoste, 1 Smedes & M. [Miss.] 70, 107, and cases cited; Daniels v. Davison, 16 Ves. 249.

"In the case of Daniels v. Davison, Lord Eldon said: 'Where there is a tenant in possession, under a lease, or an agreement, a person purchasing part of the estate must be bound to inquire on what terms that person is in possession. * * * My opinion, therefore, considering this as depending upon notice, is that, this tenant being in possession under a lease, with an agreement in his pocket to become the purchaser, these circumstances altogether, give him an equity, repelling the claim of a subsequent purchaser, who made no inquiry as to the nature of his possession.' It was accordingly held that the possession of a tenant is notice to a purchaser of the actual interest he may have, either as tenant, or by an agreement to purchase the premises. So, in Hanbury v. Lichfield, 2 Mylne & K. 629, it was held that, where a tenant is in possession of the premises, a purchaser has implied notice of the title. Apart from any registry, possession ought to put the purchaser on inquiry. Woods v. Farmere, 7 Watts [Pa.] 382 [32 Am. Dec. 772]. 'Possession by the vendee,' said Chief Justice Sharkey, 'is evidence to creditors and purchasers of the conveyance, or, at least, it is so strong a circumstance that it is now uniformly regarded as sufficient evidence of notice.' 1 Smedes & M. 107. In the language of the court, in Pritchard v. Brown, 4 N. H. 397 [17 Am. Dec. 431]: 'It is not to be presumed that any man who wishes to purchase land honestly will buy without knowing what are the claims of a person who is in the open possession of it.'

"The possession of the plaintiffs' tenants was certainly sufficient to put the purchaser on inquiry, which must have led to a knowledge of the plaintiffs' title. It is therefore, in judgment of law, notice to the purchaser of that title. Wethered v. Boon, 17 Tex. 143. He ought to be deemed to have 'reasonable information' of a fact, who has the means of information afforded him, and whose situation makes it his duty to inquire of those from whom the information may be obtained. Such was the case of the defendant, Duren, and his vendor, Dailey. It is admitted, that at the time of their respective purchases the plaintiffs were in possession, by their tenants, under leases or agreements, for the purchase of the land. The defendants are therefore affected with notice, and cannot claim the protection of innocent purchasers. The plaintiffs' older title must therefore prevail over the title under which the defendants claim."

Many cases since the above rule was announced have followed the principle announced therein; for it is a sound legal proposition. The record does not show, as said above, that defendants in error did or did not have actual notice of the transfer of the certificate from Andrews to Penn. The court did not find they had actual notice. We are constrained to hold, it appearing from the record, and the recitals in the deed from Margaret McDonald Frisby and A. J. Frisby, that Mrs. McDonald, before she married Frisby, bought the land and executed her notes in payment therefor, and that B. F. Wright was the holder of the notes, and that

same were unpaid at the time of the execution of the sheriff's deed, that the same doctrine of innocent purchaser applies to the purchaser in the sheriff's sale, and that, before they could acquire any title as against the holder of the notes, it would be necessary to show that they complied with the rule above announced. Jones and Smith, purchasers at the sheriff's sale, might have known the facts in connection with the title, and as before intimated, from the fact that no claim to the premises was set up by them or their heirs for more than forty years, it would, in our minds, be persuasive that they did have this knowledge. We believe from the record in this case that the plaintiff in error has shown a good title to the land in controversy, that defendants in error cannot be protected as innocent purchasers, and that the alleged outstanding title cannot prevail.

Therefore, so believing, the said assignment is sustained, and it follows that this cause must be reversed and rendered for plaintiff in error.

It is so ordered.

### On Motion for Rehearing.

DAVIS, J. On the 5th day of September, A. D. 1839, the state of Texas issued to John Andrews land certificate No. 355, entitling the said John Andrews to one-third of a league of land, and which certificate was filed for record in Trinity county, Tex., on August 9, A. D. 1875. There is indorsed upon this certificate the following:

"Know all men by these presents that I, John Andrews, sell, transfer, or bargain, and deliver, in the county of Houston and republic of Texas, unto William Penn, in the county and republic aforesaid, the within claim or certificate, for the sum of seven hundred, thirty-eight and $50/100$ dollars in hand paid, the title whereof I will always support and defend against my heirs, administrators, or administratrix, as

"Given under my hand and seal this 1st day of November, 1839. John Andrews. [Seal.]

"Signed and delivered in the presence of us: "Test: B. F. Wright, "C. N. Nelson."

The certificate of acknowledgment to this purported transfer is as follows:

"The State of Texas, Travis County.

"Before me, N. C. Raymond, a notary public in and for said county, duly commissioned and sworn, personally appeared B. F. Wright, who is represented to me as the identical B. F. Wright whose signature appears as a witness to the transfer hereto annexed, who upon his oath says that he was present and saw John Andrews sign the same as his voluntary act and deed, and that he acknowledged that he did so for all the uses, purposes, and consideration therein set forth and expressed; that he signed the same as a witness at the request of said parties thereto.

"Given under my hand and notarial seal at Austin this 3d November, 1856.

"[L. S.]  N. C. Raymond, "Not. Pub. Travis Co."

Then follows:

"General Land Office, Austin, Texas, November 3, 1856.

"I. S. Crosby, commissioner of general land office of the state of Texas, hereby certify that the foregoing, with the erasures, are correct copies of the originals now on file in this office. In testimony whereof I hereunto set my hand and affix the seal of said office, the day and date last above written. S. Crosby, Com'r.

"Filed for record this 23d Feby., 1859.
"B. S. Mangum, Clk.

"The State of Texas, County of Trinity.

"I hereby certify that the foregoing deed of conveyance is duly recorded in my office, in Book B, pages 527 and 528, in the County Records for Deeds, etc.

"In testimony of which I have hereunto set my hand and seal of office at Sumpter, 25th March, 1859.

"Bryant S. Mangum, Clk. Co. Ct.

"Filed for record August 9, 1875, and recorded in Deed Records Trinity County, Tex., Book B, pages 175 and 176."

When the transfer of the certificate from Andrews to Penn was offered in evidence by the plaintiff, the defendants objected, on the ground that the certificate of acknowledgment was defective in this: That the notary used this language, "represented to me," instead of "proven to me," as required under the law at that time, and, further, that the description in the transfer of the certificate is insufficient, in this, that it does not state the number of the certificate, the date of its issuance, or the quantity of land to which the holder of it would be entitled.

The trial court overruled these objections, and allowed this instrument to be introduced in evidence; but in his conclusions of law the trial court held that this instrument was not properly authenticated for registration, and that the registration of this instrument, if properly authenticated, was insufficient to charge purchasers under the heirs of John Andrews with constructive notice of any rights to the land in controversy in William Penn or others holding under him. This conclusion of the trial court is divided into two parts: (1) This instrument was not properly authenticated; and (2) if properly authenticated, was insufficient to charge purchasers under the heirs of John Andrews with constructive notice of any rights to the land in controversy in William Penn, or others holding under him.

[1, 2] Directing our attention now to the first part of the trial court's conclusion: The language used by the notary "represented to me." We understand that:

"All that is required in respect to the frame of the certificate is a substantial compliance with the laws under which they are made. When substance is found, it is neither the duty nor inclination of courts to jeopardize titles, in any way depending upon them, by severe criticism upon their language." Cow. & H. Notes, pt. 2, note 254 to page 247.

Now, if the language used in this certificate of acknowledgment "represented to me" is a substantial compliance with the law, then this certificate of acknowledgment should be held sufficient. The law required at the time this certificate of acknowledgment was made that the subscriber must be personally known to the officer or proof of a subscribing witness must be by some one per-

sonally known to the officer taking the proof to be the person whose name is subscribed to the instrument as a witness, or must be proved to be such by the oath of a credible witness, which fact shall be noted in the certificate; and the object of the law on this subject was to avoid and prevent just what is reflected by this certificate of acknowledgment, not a stranger who represents himself to be a particular person, nor a stranger who is represented by another to be a particular person, but the certificate must reflect the satisfaction of the notary that the one whose acknowledgment he is taking is the identical person whose name is subscribed to the instrument. Does not the language used "represented to me" preclude the idea that he was "known," and also that he was "proven to me"? Does it not strongly show that the notary himself was not satisfied? We think that it does, and that the same is not a substantial compliance with the law, and that the trial court did not err in holding that the transfer of the certificate was not properly authenticated for registration, and this holding dispenses with the necessity of passing upon the second part of the trial court's conclusion of law, that the registration of this transfer of the certificate was insufficient to charge purchasers under the heirs of John Andrews with constructive notice of any rights to the land in controversy in William Penn, or others holding under him; but we believe this holding of the trial court also to be correct.

[3] We are of the opinion, under the facts and findings of the trial court, that T. B. Leach was an innocent purchaser for value of the 200 acres of the John Andrews one-third league.

T. B. Leach testified by affidavit:

"That he paid S. T. Robb a valuable consideration for said 200 acres of land, and paid to him the full consideration recited in the deed, in money and in work, and that at the time he bought said land he had no actual knowledge of any conveyance of the land certificate by John Andrews to William Penn or any other person; on the contrary, affiant believed when he bought said land and paid for the same that he was getting a good title; that he paid the full fair value for said land at the time of his purchase thereof."

At the time of the purchase of this 200 acres by T. B. Leach from S. T. Robb the said Robb then had in his possession the patent to the land, which had been delivered to him by the heirs of John Andrews when he purchased the survey from them.

There is no testimony in the record contradicting this testimony, and the trial court in his findings of fact found that T. B. Leach was an innocent purchaser for value without notice of the transfer of the certificate.

[4] The record discloses that on November 4, 1868, one R. A. Clifton, as sheriff of Trinity county, Tex., executed a deed to H. N. Jones and S. Y. Smith, and which deed was made pursuant to a purported valid

sale under three executions issued upon purported valid judgments rendered against A. J. Frisby and Margaret Frisby in favor of F. C. Roberts in the county court of Trinity county, Tex. The body of this sheriff's deed is as follows:

"By virtue of three certain executions issued out of the county court of Trinity county in favor of F. C. Roberts v. A. J. Frisby and Margaret Frisby on three certain judgments rendered on the 6th day of October, 1868, and directed and delivered to me, R. A. Clifton, as sheriff of Trinity county, Texas, commanding me of the goods and chattels, lands and tenements of said Margaret Frisby to make certain moneys in said writ specified, I, R. A. Clifton, sheriff as aforesaid, did, upon the 9th day of October, 1868, levy on and seize all of the estate, right, title and interest which the said defendant Margaret Frisby on the 9th day of October, 1868, so had of, in, and to the premises hereinbefore described, and on the first Tuesday of November, 1868, within the hours prescribed by law, sold said premises at public vendue in the county of Trinity at the door of the courthouse thereof, having given public notice of the time and place of such sale, etc., and whereas at said sale the said premises were struck off to H. N. Jones and S. Y. Smith for the sum of $322.00, and in consideration of the premises aforesaid and the payment of said sum convey to said H. N. Jones and S. Y. Smith all that certain tract or parcel of land lying and being situated in the county of Trinity and state of Texas, known as the Penn tract of land, lying on the Trinity river in said county, the metes and bounds of which are as follows: [Here follow metes and bounds]—containing 1,020 acres of land, more or less."

This deed was recorded March 8, 1870, and re-recorded December 1, 1875.

It was agreed upon the trial of the case that all of the records of Trinity county were destroyed by fire in November, 1872, and all court records, except bills of indictments, were destroyed by fire in 1876. The record further discloses that H. N. Jones and S. Y. Smith, either themselves or through their trustee, H. M. Trueheart, during the year 1870 sold all of the land purchased by them at sheriff's sale, and that J. S. Williams and William H. Guion, two of the purchasers, rendered the land for taxation from the year 1877 down to and including the year 1887, and paid the taxes thereon for said years.

On November 12, 1861, A. J. Frisby and wife, Elizabeth Frisby, conveyed to Mrs. M. McDonald this one-third league. Then Mrs. Elizabeth Frisby died, and A. J. Frisby and Mrs. M. McDonald were married, and after the marriage of A. J. Frisby and wife, Margaret Frisby, this land was levied upon as the property of Margaret Frisby, and sold by the sheriff of Trinity county, R. A. Clifton, to H. N. Jones and S. Y. Smith, on November 4, 1868, under three purported judgments in favor of F. C. Roberts and against A. J. Frisby and his wife, Margaret Frisby, and after this sheriff's sale A. J. Frisby and his wife, Margaret Frisby, sold this land to J. Lyle Smith, as administrator of B. F. Wright's estate, and agent of O. L. Taylor. The deed from A. J. Frisby and wife, Elizabeth Frisby, to Mrs. M. McDonald, recites a

cash paid consideration of $5,051. There was no lien reserved on the land in this deed to secure a deferred payment. The deed from A. J. Frisby and wife, Margaret Frisby, to J. Lyle Smith, was offered in evidence by defendants in error as an outstanding title against plaintiff in error. None of the records pertaining to the three judgments, nor the judgments, nor the executions under which the sheriff levied upon and sold this land were offered in evidence. The trial court found this sheriff's deed to be an outstanding title, and we copy this part of the trial court's findings:

"Neither of the three judgments recited in the deed executed by Clifton as sheriff of Trinity county, nor the executions recited therein, or certified copies thereof were offered in evidence, but I conclude from the recitals in said sheriff's deed, and the proof of the destruction of the records of Trinity county, as aforesaid, that said judgments in fact existed against the said A. J. Frisby and wife, Margaret Frisby, were valid judgments and were rendered as recited in the sheriff's deed, and that the executions were issued thereon, as recited in the sheriff's deed, and the sale legally made thereunder."

Plaintiff in error contends that the trial court erred in admitting this deed in evidence, and in holding that it showed an outstanding title, for the following reasons, as set out in plaintiff's second, third, fourth, fifth, and sixth assignments of error:

(1) Because said deed is not admissible in evidence as against the plaintiff, nor are the recitals therein admissible against the plaintiff, because said deed and the recitals therein are hearsay as to plaintiff, and he is not bound by said deed nor the recitals therein.

(2) Because the said deed, and the recitals therein, are insufficient to show that any valid judgment was ever rendered against the said Margaret Frisby, or that the various legal requirements necessary to a valid sale by said sheriff were ever complied with.

(3) Because the recitals in said deed affirmatively show that the sale of said land was made under three executions out of the county court of Trinity county, on three judgments, and that there was no notice given of the time and place of sale under either of said judgments, and the recitals in said deed show that said sale, if any was ever made, was not made under any one or either of said judgments, and the recitals in said deed show that said sale, if any was ever made, was not made under any one or either of said judgments at one and the same time, and was therefore invalid.

(4) Because the recitals in said deed affirmatively show that no notice of sale was ever given of the time, place, and manner of said sale, and the same is therefore invalid.

(5) Because the proof shows that Margaret McDonald bought the land in controversy from A. J. Frisby and wife, Elizabeth Frisby, and executed her notes in payment of said land, for the sum of $4,550, payable to B. F. Wright and O. L. Taylor, and at the time of the sheriff's sale and deed the said notes were outstanding and a valid lien against said land, and that the superior legal title and the equitable title to said land was in the holders of said notes, to secure the payment of same, and that the sale by Frisby and wife, Margaret Frisby, to Smith, vested the legal title in Smith, as administrator of the estate of B. F. Wright, and Clement Penn, O. L. Taylor and wife, Francina Taylor, and that plaintiff in error acquired the title of B. F. Wright, Clement Penn, O. L. Taylor and wife, Francina Taylor, and thus now holds the legal title.

(6) Because the evidence showed a complete and perfect chain of title in plaintiff, and failed to show any title in defendants.

The records of the proceedings of the county court of Trinity county leading up to final judgments in favor of F. C. Roberts and against A. J. Frisby and wife, Margaret Frisby, and the judgments, and the issuance of executions, and the executions, if they be in existence, are necessarily the best and the only competent evidence to establish a valid sale by the sheriff, under execution, and if they be in existence, the recitals in a sheriff's deed under execution will not be sufficient to show a valid judgment. Terrell v. Martin, 64 Tex. 124.

But in this case the record discloses that the minutes of the county court and the deed records of the county were destroyed by fire nearly 40 years before the trial of this case. It has been held that, where the records of a county have been shown to have been destroyed by fire, the recitals in the deed, which was an ancient instrument, were sufficient in themselves to show that the sale was made under the order of the probate court. Williams v. Cessna, 95 S. W. 1106–1109.

In the case of Giddings v. Day, 84 Tex. 607, 19 S. W. 682, the court held that:

"Proof of the destruction of the records of the justice court from which the execution purported to issue have been made, we are of the opinion that after the lapse of more than 30 years the existence of the judgment and the execution recited in the sheriff's deed ought to be presumed."

We are therefore of the opinion that the recitals in said sheriff's deed, under the facts of this case, were sufficient to establish the presumption that valid judgments were rendered against A. J. Frisby and his wife, Margaret Frisby, and that a valid sale, under executions properly issued, was made. The sheriff's deed recites:

"That by virtue of three certain executions issued out of the county court of Travis county * * * having given public notice of the time and place of such sale," etc.

[5, 6] We see no reason why the sheriff could not levy on the land to satisfy three executions, the plaintiff and defendants in each execution being the same, and if proper notice was given of the sale under only one of the executions, the sale would be valid, if all other necessary requisites had been complied with.

[7] We are also of the opinion that there is nothing in the contention that the two notes which A. J. Frisby and his wife, Margaret Frisby, took up by deeding this land to J. Lyle Smith were a lien upon the land. There is nothing in the record which discloses such fact, except that we might infer this from the recital in the deed from A. J. Frisby and wife, Margaret Frisby, to Smith, that the notes were of even date with this deed; but the deed from A. J. Frisby and wife, Elizabeth Frisby, to M. McDonald, recites a consideration of $5,051 paid.

The record discloses that J. Lyle Smith, as administrator or trustee, nor any one claiming through or under him, ever asserted any claim whatever to this land until 1913, when plaintiff in error purchased this land from Amanda 'Caroline Wells and others; and the trial court found that:

"Except for the execution of the deed by Francina Taylor and her husband, O. L. Taylor, and Clement Penn, to A. J. Frisby in 1851, I do not find any assertion of claim to the land by the heirs of William Penn, subsequent to the death of the latter until the execution of the conveyance by the said Amanda Caroline Wells and others to plaintiff in 1913."

We are therefore of the opinion that this court erred in reversing and rendering this case, and the motion of defendants in error is granted.

The judgment of this court is set aside, and the judgment of the lower court is affirmed.

BROOKE, J. (dissenting). Upon filing the original opinion in this case, which reversed and rendered the judgment of the lower court, a fierce assault was made upon it in the motion for rehearing filed by defendants in error. I was therefore incited to make a more careful and closer consideration of the record by the zeal displayed by counsel for defendants in error. After a thorough consideration of the record, I am the more thoroughly convinced than at the outset that the said opinion correctly disposed of the case. I have seen nothing to cause me for a moment to have any doubt about its correctness, and I discuss the same here briefly again, feeling constrained to enter my dissent and disagreement with the majority opinion handed down by this court. What I shall say will be divided into three sections, viz.:

(1) The title of plaintiff in error, which can be briefly stated as follows:

The certificate from the state of Texas to John Andrews, together with its transfer to William Penn, and the indorsements thereon, is as follows:

"Republic of Texas, County of Liberty. No. 355.

"This is to        that John Andrews has appeared before us, the board of land com'rs of the county aforesaid, and proved according to law that he emigrated to this republic on the 18th day of May A. D. 1836, a single man; that he has served in the army and rec'd an honorable discharge, and is entitled to one-third of a league of land, for which this is his certificate.

"Given under our hands, this 5th day of September, A. D. 1839. Hugh B. Johnson, Chf. J. C. L., Ex Off'o Pres. B. Land Com'rs. Alexander S. Roberts, Associate do.        Associate do.
"Attest: Geo. W. Miles, Clk. Co. Court, Ex-Offo. C. B. Land Com'rs.

"Filed for record Aug. 9, 1875, and recorded in Deed Records of Trinity County, Texas, at Book B, pages 175 and 176.

"Know all men by these presents that I, John Andrews, sell, transfer or bargain, and deliver, in the county of Houston and republic of Texas, unto William Penn, in the county and republic aforesaid, the within claim or certificate, for the sum of seven hundred thirty-eight dollars and 50/100 cents in hand paid, the title whereof I will always support and defend against my heirs, assigns, administrators or administratrix, as

"Given under my hand and seal this 1st day of November, 1839        John Andrews. [Seal.]
"Signed and delivered in the presence of us: Test: B. F. Wright. C. N. Nelson.
"The State of Texas, Travis County.

"Before me, N. C. Raymond, a notary public in and for said county, duly commissioned and sworn, personally appeared B. F. Wright, who is represented to me as the identical B. F. Wright whose signature appears as a witness to the transfer hereto annexed, who upon his oath says, that he was present and saw John Andrews sign the same as his voluntary act and deed, and that he acknowledged that he did so for all the uses, purposes and considerations therein set forth and expressed; that he signed the same as a witness at the request of the said parties thereto.

"Given under my hand and notarial seal, at Austin, this 3d November 1856.
"[L. S.]    N. C. Raymond, Not. Pub. Travis Co.

"General Land Office, Austin, Texas, November 3rd, 1856.
"I, S. Crosby, commissioner of the general land office of the state of Texas, hereby certify that the foregoing, with the erasures, are correct copies of the originals now on file in this office.

"In testimony whereof I hereunto set my hand and affix the seal of said office the day and date last above written.
"S. Crosby, Com'r.
"Filed for record this 23d Feby., 1859.
"B. S. Mangum, Clk.

"The State of Texas, County of Trinity.
"I hereby certify that the foregoing deed of conveyance is duly recorded in my office, in Book B, pages 527 and 528, of the County Records for Deeds, etc.

"In testimony of which I have hereunto set my hand & seal of office at Sumpter, 25th March, 1859.
"Bryant S. Mangum, Clk. Co. Ct.

"Filed for record August 9th, 1875, and recorded in Deed Records of Trinity County, Texas, Book B, pages 175 and 176."

In connection with the transfer was offered a certified copy of returns of the field notes showing that the land was surveyed for William Penn by Chas. C. Nelson, deputy surveyor of Houston county, on February 1, 1838, which, with the indorsements thereon, is as follows:

John Andrews.
William Penn, Assge.
Certificate No. 355.
Liberty County
Survey for William Penn of 6,376,000 sqr. varas of land on the east bank of Trinity river, being part to which he is entitled by virtue of certificate No. 355 issued to John Andrews by the board of land commissioners of Liberty

county, situated in Trinity county on the bank of Trinity river about 6 miles above the mouth of White Rock Creek. Beginning at stake on B. F. Wright's south boundary of third whence a pine S. 46° W. mkd. P 9⁴/₁₀ varas dist a pine S. 81½° W. Dist 4 varas. Thence south at 540 varas Brch C. S. S. W. at 775 road at 1090 second crossing of Brch C. S. S. E. at 4000 va. Edge of river bottom at 5130 corner on river bank a sycamore mkd P N, Whence a cotton wood dist 10 varas S. 76° W. Thence with the river S. 77° E. 400 varas N. 80° E. 895 to William Richards' upper corner on river bank, Pecan whence an ash N. 11° E. dist. 15 varas mkd. R. Thence with Richards' west boundary line north at 200 varas Lake 150 vs. across at 1460 leave bottom at 4950 corner of said Richards' survey stake whence a pine 10⁴/₁₀ varas dist mkd W. R. N. 23 W. a hickory S. 45° W. mkd W. R. 11 varas. Thence west at 1,265 varas beginning corner. Three labors arable and remainder pasture land.

Chas. S. McCoy,
J. V. Pringle, Chain Carriers.

I, Chas. C. Nelson, do solemnly declare by the oath of my office that the foregoing survey has been made since the first day of Feby., 1838

Chas. C. Nelson,
Dept Surveyor Houston Co.

Houston Co. Oct., 1839.

Republic of Texas          Crockett, Sept. 7, 1842.

Received of the hand of B. F. Wright thirty dollars 83 cents promissory notes of the government the government dues in the within field notes.

E Zepett, Chief Justice and Receiver of Land Dues Houston Co.

No.
John Andrews.
  2d Class.
One third league.
Houston County.
In survey of 6,376,000 vrs.
  83.857³⁶/₁₀₀ sq. var.
  14⁶/₇ acres too much.
In survey of 1,957,333 sq. vr.
  35,692⁹⁶/₁₀₀ sq. var.
  6⅓ acres too much.
The rivers are not well meandered.    L. M. M.
2/No. 44.
John Andrews.
2nd Class 6,376,000 varas.
    Houston Co.

I certify that I have examined the within field notes and find them correct and the survey made according to law.

Houston County, Nov. 13, 1839.
Geo. Aldrich, C. Surveyor Houston Co.

3/File 44.
Houston Co 2nd Class.
Field Notes.
John Andrews.
  6,376,000 varas.
Patented Oct. 19th, 1850.
    Grooms.
  456 (1).
M. No. 1089.

Certified copy made by J. T. Robison Commissioner of the General Land Office of Texas on January 19th, 1915.

The patent issued to John Andrews, and by some means was found in the possession of his heirs, and later came into the possession of S. T. Robb. Said patent, together with the indorsements thereon, is as follows:

"No. 461. In the Name of the State of Texas Vol. 3.

"To all to whom these presents shall come: Know ye I, P. H. Bell, Governor of the state aforesaid, by virtue of the power vested in me by law and in accordance with the laws of said state in such case made and provided, do by these presents grant to John Andrews, his heirs or as-

signs, forever, six million three hundred and seventy six thousand square varas of land, situated and described as follows:

"In Houston district, Trinity county, about 6 miles above the mouth of White Rock creek, by virtue of certificate No. 355, issued by the board of land commissioners of Liberty County on the 5th day of September, 1839, beginning at a stake on B. F. Wright's S. line, from which a pine marked P bears S. 46° W. 9⁴/₁₀ vars. another bears S. 87½ varas; thence South at 540 varas a branch, at 775 varas a road, 1990 vs. crosses (crosses) branch, 4000 vs. edge of river bottom, 5130 vs. to a sycamore mkd P M on the banks of the river, from which a cottonwood bears S. 76° W.: thence, with the river S. 77° E. 400 vs. & N. 80° E. 895 vs. to William Richards' upper corner on the bank of the river, from which an ash mkd E. bears N. W., E. 15 vs.; thence with Richards' W. line, N. at 100 vs. lake, at 150 vs. crosses same, at 1400 vs. leave bottom, at 4950 vs. said Richards' corner, a stake from which a pine mkd WR bears N. 23 W. 10⁴/₁₀ vs. a hickory marked WE bears S. 45° W. 11 varas; thence west at 1,265 varas, the beginning. Hereby relinquishing to him, the said John Andrews, and his heirs or assigns, forever, all the right and title in and to said land heretofore held and possessed by the said state, and I do hereby issue this letter patent for the same.

"In testimony whereof I have caused the seal of the state to be affixed, as well as the seal of the general land office. Done at the city of Austin on the 19th day of October in the year of our Lord one thousand eight hundred and fifty. P. H. Bell, Governor. [State Seal.] Geo. W. Smith, Commissioner of the Gl. L'd Office [Seal of G'l L'd Office.]

"The State of Texas, Houston County.

"I hereby certify that the within letters patent is duly recorded in Book M, page 281, of the Records of Said County for Deeds, etc.

"Witness my hand and seal of office, at Crockett, this 23d day of June, A. D. 1858, at 10 o'clock a. m.

"[L. S.] O. C. Aldrich, Clk. Co. Ct. H. Co.

"Filed for record June 21, 1858, at 8 o'clock a. m.          O. C. Aldrich, C. C. C. H. C.

"The state of Texas, County of Trinity.

"I hereby certify that the within letter patent is duly recorded in Book B, pages 545 & 6, ot the Records of Said County for Deeds, etc.

"Witness my hand and seal of office, at Sumpter, this 27th April, A. D. 1859. Bryant S. Mangum, Clk. Co. Ct. Trinity Co., Texas.

"Filed for record 19th April, A. D. 1859. B. S. Mangum, Clk. Co. Ct. Trinity Co.

"Also filed for record June 4th, 1877, and recorded in Deed Records Trinity County, Texas, at Book C, on pages 19, 20, and 21."

Follows the deed from Clement Penn and others to A. J. Frisby, dated October 12, 1861, for a consideration of $5,051 paid, conveying "all that tract or parcel of land lying and being situated in the county of Trinity, state of Texas, and known as the Penn tract of land, lying on Trinity river, in said county [here following the same field notes set out in the patent to John Andrews, quoted above], containing 1,020 acres of land, more or less," said deed having been filed for record August 9, 1875, and recorded in the Deed Records of Trinity County, Tex., at Book B, page 177.

Then the deed from A. J. Frisby and wife, Elizabeth Frisby, to Mrs. Margaret McDonald, dated November 12, 1861, reciting a consideration of $5,051 paid, conveying the same 1,020 acres described in the patent and deed

next above, "known as the Penn tract," said deed having been filed for record on August 9, 1875, and recorded in the Deed Records of Trinity County, Tex., in Book B, page 178.

Next deed from Mrs. M. Frisby and others to J. Lyle Smith, administrator, as follows:

"The State of Texas, County of Walker.

"Know all men by these presents that whereas, on the 12th day of October, A. D. 1861, Clem't Penn, O. L. Taylor and his wife, Francina Taylor, as heirs of William Penn, dec'd, executed in the state of La. and parish of Rapides, before Frank E. Forks, notary public, a deed to A. J. Frisby to all that certain tract or parcel of land lying in Trinity county, Texas, on the Trinity river, known as the Penn tract, containing one-third of a league, which deed has not been recorded; and whereas, on the 12th day of November, A. D. 1861, A. J. Frisby and his wife executed to Mrs. M. McDonald a deed to the same land, which has not been recorded; and whereas, J. Lyle Smith, as administrator of B. F. Wright, dec'd, and as agent of said O. L. Taylor, holds the notes of said M. McDonald, one to O. L. Taylor for $2,000.00, and the other to B. F. Wright for $2,550.00, both dated November 12th, 1861; and whereas, the said A. J. Frisby and Mrs. M. McDonald have since intermarried, and propose to give up said land, as they are unable to pay said notes, to said Smith as administrator aforesaid, and said Taylor and wife and Clem't Penn, one half to be held by said Smith as administrator of B. F. Wright, dec'd, and the half to said Penn's heirs; and whereas, the said Smith has delivered up to said M. McDonald, now Mrs. Frisby, said two notes canceled: Now, therefore, in consideration of the premises, I, M. Frisby, being joined by my said husband, A. J. Frisby, do by these presents sell, grant and convey unto the said J. Lyle Smith and to the said O. L. Taylor and his wife, Francina Taylor, and Clem't Penn, all my right, title, interest and claim in and to said tract of land. To have and to hold the same, in equal, undivided moieties, that is to say, one undivided half unto Smith as administrator of B. F. Wright's estate, and the other undivided half unto the said Clem't Penn, O. L. Taylor, and Francina Taylor, it being expressly understood that I convey no title but such as I have through the chain herein described.

"Witness our hands and scrolls for seals this June 12th, A. D. 1869.    A. J. Frisby. [Seal.]
                                     "M. Frisby. [Seal.]"

This deed was acknowledged by grantors before J. Courtade, clerk of the county court of Walker county, Tex., June 11, 1869, filed for record August 9, 1875, and recorded at Book B, page 179, Deed Records of Trinity County, Tex.

Next was introduced the admission of counsel that Mrs. M. McDonald married A. J. Frisby after the conveyance to her by Frisby and wife.

There was also introduced an admission by counsel that J. Lyle Smith was duly appointed administrator of the estate of B. F. Wright, deceased, and duly qualified as such, and that in the inventory of the estate of B. F. Wright, deceased, there occurs the following:

"Note of M. McDonald dated November 10th, 1861, due June 4th, 1861, $2,551.00."

There was introduced in evidence the admission of counsel that the plaintiff has conveyances from all the heirs of B. F. Wright, deceased, and the further admission that Amanda C. Wells and the other grantors in the deed dated September 10, 1903, to C. H. Kenley, are the only heirs at law of Clement Penn, who was a son and heir at law of William Penn, deceased.

There was read in evidence a deed from Mrs. Sarah K. Smith, widow and sole executrix of the will of J. Lyle Smith, which will authorized said executrix to make sale of and convey lands belonging to the estate of the deceased to C. H. Kenley, and also there was read in evidence a deed from Amanda Caroline Wells and another to C. H. Kenley.

As shown by the above, the instruments were recorded and were of record in Trinity county prior to the time any claim was set up or made by Robb or his heirs or assigns, through whom defendants in error claim. All of said instruments being upon record in Trinity county, an attack was made by defendants in error in this suit that the transfer of the certificate from Andrews to Penn did not entitle the same for registration, on account of the defective acknowledgment. This matter was thoroughly gone over, and the authorities cited at length, in the original opinion filed in this cause on December 21st, and as said in that opinion:

"The authorities settle the question beyond the peradventure of a doubt in favor of the contention of plaintiff in error, and we are persuaded that the certificate under consideration is a substantial compliance with the statute, and that the court erred in holding that the same was insufficient."

I am still of opinion that the certificate is good, and is a substantial compliance with the statute, and entitled the certificate and its transfer to be registered. Conceding that to be the law, all of the above instruments, with the declarations and statements in the same, being properly of record, were sufficient, in my judgment, to charge purchasers under the heirs of John Andrews with constructive notice of any rights to the land in controversy in William Penn or others holding under him.

(2) It is urged by defendants in error that they are purchasers of the land for value without notice.

Examination shows that Robb, under whom defendants in error claim, is holding under the heirs of John Andrews, the patentee of the land, and it was admitted that he had conveyances from the sole heirs at law of Elizabeth Foster, and under her, the sole heirs of John Andrews, the patentee of the land. This conveyance was executed on the 30th day of November, 1876, and was filed for record June 4, 1877, and recorded in the Deed Records of Trinity County. In view of the fact that Robb was not only charged with notice, by the registration of the conveyances heretofore set out, that the certificate had been transferred from John Andrews, the trial court in addition filed conclusions of law and fact in this case, section 25 of same reading as follows:

"Prior to the purchase of said land by the said Sam T. Robb from the heirs at law of said Elizabeth Foster, the said Sam T. Robb had actual notice of the transfer of said certificate by John Andrews to William Penn."

So it appears that those holding under Robb, in so far as he is concerned, could not be heard to say that he was an innocent purchaser.

The same might be said of Leach, notwithstanding the fact that he testified by affidavit that he paid S. T. Robb a valuable consideration for 200 acres of land, and that at the time he bought he had no actual notice of a conveyance of the land certificate by John Andrews to William Penn. If such be the case, it seems that Robb not only concealed from Leach the facts in his possession, and of his actual knowledge of the transfer of the certificate from Andrews to Penn, but also the said Robb seems to have gotten into his possession the patent of the land, which perhaps had come into his hands in the transaction in the purchase from the heirs of John Andrews.

We are compelled to assume, the record being silent, that Leach either did not inquire of Robb or that, if he did inquire, Robb concealed the facts and failed to give him information of his actual knowledge of the transfer of the certificate from John Andrews to William Penn. Nevertheless the same record was in existence of the title heretofore set out, and Leach was charged with knowledge of the recitations in the conveyances, that is to say, he was put upon notice by the record then existing in Trinity county, and before he purchased, that the land was originally granted to John Andrews; that the certificate was transferred to William Penn; that the identical land in controversy had been surveyed, the field notes of the same specifically described the land; that patent had issued to the same; that the land had been sold to A. J. Frisby, and that he had sold the same to Mrs. McDonald; that the notes of said Mrs. McDonald had not been paid, and that B. F. Wright, agent of Taylor, held the notes of said Mrs. Margaret McDonald; that the notes which were given by her were dated November 12, 1861; and that one of the notes was for $2,000 and the other was for $2,550. He was charged with notice that Frisby afterwards intermarried with Mrs. Margaret McDonald; that they were unable to pay the notes to Smith, and that the two notes were delivered to Mrs. McDonald, then Frisby, and canceled, in consideration of a conveyance by Frisby and his wife, Mrs. Margaret Frisby, to J. Lyle Smith, and to Taylor and his wife, and to Clement Penn. All of these recitations were of record, as had been said before, were open to the inspection of the public, and it was the duty of a purchaser at least to make inquiry, and make some attempt to ascertain whether or not the facts were correctly recited, and whether the heirs

of John Andrews, who had conveyed to Robb, and with whom Leach was then dealing, had any legal or equitable title to the land in controversy. Therefore, to my mind, neither Robb, who was found by the trial court to have actual knowledge of the transfer of the certificate from Andrews to Penn, nor Leach, who was charged with notice, could in any event be innocent purchasers for value.

(3) However, it is claimed that there was an outstanding title which would prevent a recovery on the part of the plaintiff in error; an outstanding title with which defendants in error are not connected; an outstanding title under a sheriff's deed; an outstanding title under which no claim is made in this suit, and which for the past 40 years has been practically ignored.

The sheriff's deed has heretofore been set out in full in the original opinion. It is admitted that there is nothing whatever, except the recitations in the deed itself, on which to base a claim under the deed. This phase of the case, however, has been covered in the original opinion, and it will be observed, as said in the original opinion, that:

"It does not appear from the recitals in the deed that any valid judgment was ever rendered against Margaret Frisby, or that any of the legal requirements necessary to a valid sale by the sheriff had been complied with. The sheriff does not even state that notice was given of the time and place of the sale, as required by law."

However, if it be a fact, as the recitations in the instruments proclaim it to be, that Frisby and wife had sold to Mrs. Margaret McDonald, that two notes had been executed for the payment of the purchase money, that the said notes were in the hands of other parties, and that after the intermarriage of Frisby and Margaret McDonald a deed was executed conveying the title to the holder of the notes, and that thereupon the said notes were canceled, we are at a loss to understand, inasmuch as the parties certainly had a right to make a conveyance of the land in payment of the unpaid purchase-money notes, and in face of the fact that neither Frisby nor Margaret McDonald Frisby own any interest in the survey, how a title which they did not own could be divested out of them, or either of them. Moreover, it is from this record sure, as much so as can be established by acts of the parties, and circumstances, and facts, that no claim is being made under the deed by those holding under same, and that none has been asserted for nearly half a century, the conclusion being irresistible that the parties knew and had reason to believe at the time that the real facts were as recited, and that Mrs. Margaret Frisby had conveyed all her right, title, and interest in the land in payment of the cancellation of the purchase-money notes executed for said land, and only on that theory can we account for the want of action on the part of the parties holding under said sheriff's deed.

To summarize, we have this situation: A good and perfect title of record in plaintiff

in error, and, as against this, a claim of defendants in error, begun when all the instruments were of record in Trinity county, and Robb had actual notice of the transfer from Andrews to Penn, that they are innocent purchasers for value, which was a contradiction in terms. Then this purported outstanding title, which fails to measure up to the requirements of the law, joined to and aided by the acts of the parties themselves, who have a right to claim under the aforesaid sheriff's deed, and do not, then the conclusion is indeed irresistible that the claim of defendants in error cannot stand, as being legally insufficient, and contrary to law and equity and good conscience.

Constrained by a sense of duty, therefore, I file this, my dissent to the majority opinion of the court heretofore handed down.